The STATE of Ohio, Appellant,

v.

SMALL, Appellee.

[Cite as *State v. Small*, 162 Ohio App.3d 375, 2005-Ohio-3813.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–316.

Decided July 28, 2005.

</div>

376

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, for appellant.

Yeura Venters, Franklin County Public Defender, and Allen V. Adair, Assistant Public Defender, for appellee.

PETREE, Judge.

{¶ 1} Pursuant to App.R. 26(A), defendant-appellee, Darryl L. Small, moves this court to reconsider its decision in *State v. Small*, 162 Ohio App.3d 325, 2005-Ohio-2291, 833 N.E.2d 736. The state agrees with defendant that we should reconsider our decision. However, the state contends that, even after further analysis, we should still render judgment in the state's favor. For the reasons that follow, we grant defendant's application for reconsideration, modify the judgment in our decision, affirm the judgment of the Franklin County Court of Common Pleas granting defendant's motion to dismiss an indictment, and sua sponte vacate our previous order remanding the cause to the trial court to consider defendant's equal-protection claim.

{¶ 2} App.R. 26 does not include guidelines to be used when determining whether a decision should be reconsidered or changed. *Matthews v. Matthews* (1982), 5 Ohio App.3d 140, 143, 5 OBR 320, 450 N.E.2d 278. Nevertheless, in *Matthews,* this court stated, "The test generally applied is whether the motion for reconsideration calls to the attention of the court an obvious error in its decision or raises an issue for our consideration that was either not considered at all or was not fully considered by us when it should have been." Id. at 143, 5 OBR 320, 450 N.E.2d 278.

{¶ 3} In his application, defendant contends that we erred because we failed "to distinguish the sort of rights 'deeply rooted in our history,' such as the expectation of a reasonable degree of privacy, that give rise to cognizable due process interests, and fundamental rights, such as freedom of speech or religion, the infringement of which require application of a strict scrutiny test when ruling on due process claims." Defendant further claims that we relied too heavily on *State v. Williams* (2000), 88 Ohio St.3d 513, 728 N.E.2d 342, certiorari denied sub nom. *Suffecool v. Ohio* (2000), 531 U.S. 902, 121 S.Ct. 241, 148 L.Ed.2d 173, when we concluded that absent any infringement of a fundamental constitutional right, there lacked a substantive-due-process ground for defendant's motion to dismiss an indictment. *Small,* 162 Ohio App.3d 325, 2005-Ohio-2291, 833 N.E.2d 736, at ¶ 23–24.

■ {¶ 4} Defendant's interest in his statutory classification is not insignificant. However, "to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." *Bd. of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 570–571, 92 S.Ct. 2701, 33 L.Ed.2d 548. See, also, *Reno v. Flores* (1993), 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1, quoting *Collins v. Harker Hts.* (1992), 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (" 'Substantive due process' analysis must begin with a careful description of the asserted right, for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field' ").

{¶ 5} In *Williams,* supra, the Supreme Court of Ohio was asked "to determine whether R.C. Chapter 2950 violate[d] constitutional rights guaranteed by the Double Jeopardy, Bill of Attainder, and Equal Protection Clauses of the United States and Ohio Constitutions, and whether R.C. Chapter 2950 violate[d] rights enumerated in Section 1, Article I of the Ohio Constitution." Id., 88 Ohio St.3d at 516, 728 N.E.2d 342. The Supreme Court concluded that R.C. Chapter 2950 did not implicate a fundamental constitutional right that had been recognized by the United States Supreme Court. Id. at 531, 728 N.E.2d 342. The Supreme Court ultimately held that R.C. Chapter 2950 was constitutional on the grounds raised in the appeals. Id. at 516, 534, 728 N.E.2d 342.

{¶ 6} Here, the Supreme Court of Ohio has already concluded that R.C. Chapter 2950 does not implicate a fundamental constitutional right that has been recognized by the United States Supreme Court. *Williams,* 88 Ohio St.3d at 531, 728 N.E.2d 342. Therefore, it is unnecessary for us to determine whether defendant's classification as a sexually oriented offender pursuant to R.C. Chapter 2950 implicates a fundamental constitutional right.

■ {¶ 7} Furthermore, because the Supreme Court of Ohio has concluded that R.C. Chapter 2950 does not implicate a fundamental constitutional right that has been recognized by the United States Supreme Court, *Williams,* 88 Ohio St.3d at 531, 728 N.E.2d 342, and because we cannot ignore the Supreme Court of Ohio's interpretation, see, e.g., *State v. Cox,* Adams App. No. 02CA751, 2003-Ohio-1935, 2003 WL 1889479, at ¶ 12, we conclude that our determination that defendant's classification as a sexually oriented offender does not implicate any fundamental constitutional right under either the state or federal constitutions was not error. See *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, 8, 15 O.O.3d 3, 399 N.E.2d 66 (stating that the Ohio Constitution's guarantees of due process and equal protection are substantially equivalent to the United States Constitution's guarantees); see, also, *Small,* 162 Ohio App.3d 325, 2005-Ohio-2291, 833 N.E.2d 736, at ¶ 23–24.

{¶ 8} Accordingly, notwithstanding defendant's contention, we do not find that our reliance upon *Williams* was misplaced. Neither do we conclude that we relied too heavily on *Williams.*

{¶ 9} The state argues, however, that our conclusion that defendant's classification involves no fundamental right merely determines that strict-scrutiny review is not implicated. Because nonfundamental rights can be cognizable under a due-process analysis, the state contends that our analysis was truncated, and therefore we still need to consider defendant's due-process claim under a rational-basis level of scrutiny. Defendant also claims that our decision is lacking because it failed to address "whether there is a rational basis for classifying those who commit a non-sexually motivated kidnapping as sexually oriented offenders, thus subject to registration requirements and prosecution for failures to do so."

{¶ 10} In *Ingraham v. Wright* (1977), 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711, the United States Supreme Court stated:

> "[T]he range of interests protected by procedural due process is not infinite." *Board of Regents v. Roth, supra,* at 570, 92 S.Ct., at 2705 [33 L.Ed.2d 548]. We have repeatedly rejected "the notion that any grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause." *Meachum v. Fano,* 427 U.S. at 224, 96 S.Ct., at 2538 [49 L.Ed.2d 451]. Due process is required only when a decision of the State implicates an interest within the protection of the Fourteenth Amendment. And "to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." *Roth, supra,* 408 U.S., at 570–571, 92 S.Ct., at 2705, 33 L.Ed.2d 548.

Id. at 672, 97 S.Ct. 1401, 51 L.Ed.2d 711. See, also, *Hampton v. United States* (1976), 425 U.S. 484, 490, 96 S.Ct. 1646, 48 L.Ed.2d 113 ("The limitations of the Due Process Clause of the Fifth Amendment come into play only when the Government activity in question violates some protected right of the Defendant"); *Perry v. McGinnis* (C.A.6, 2000), 209 F.3d 597, 609 ("The violation of a fundamental right * * * is necessary for a successful substantive due process claim").

{¶ 11} The Sixth Circuit Court of Appeals has observed:

> Substantive due process, a much more ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are "implicit in the concept of ordered liberty." * * * While this is admittedly a somewhat vague definition, it is

generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available.

*Gutzwiller v. Fenik* (C.A.6, 1988), 860 F.2d 1317, 1328.

{¶ 12} Subsequent to *Ingraham*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711, in *Reno*, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1, the United States Supreme Court considered a substantive-due-process claim that alien juveniles suspected of being deportable had a fundamental right to freedom from physical restraint. Id. at 301–306, 113 S.Ct. 1439, 123 L.Ed.2d 1. In its discussion, the Supreme Court explained that "narrow tailoring is required only when fundamental rights are involved. The impairment of a lesser interest * * * demands no more than a 'reasonable fit' between governmental purpose * * * and the means chosen to advance that purpose." Id. at 305, 113 S.Ct. 1439, 123 L.Ed.2d 1.

{¶ 13} Later, in *Washington v. Glucksberg* (1997), 521 U.S. 702, 722, 117 S.Ct. 2258, 138 L.Ed.2d 772, the United States Supreme Court stated:

In our view * * * the development of this Court's substantive-due-process jurisprudence * * * has been a process whereby the outlines of "liberty" specially protected by the Fourteenth Amendment—never fully clarified, to be sure, and perhaps not capable of being fully clarified—have at least been carefully refined by concrete examples involving fundamental rights found to be deeply rooted in our legal tradition. This approach tends to rein in the subjective elements that are necessarily present in due-process judicial review. In addition, by establishing a threshold requirement—that a challenged state action implicate a fundamental right—before requiring more than a reasonable relation to a legitimate state interest to justify the action, it avoids the need for complex balancing of competing interests in every case.

{¶ 14} Thus, by implication, the United States Supreme Court in *Reno* and *Glucksberg* suggests that a nonconstitutional guarantee or a nonfundamental right may also implicate a due process interest. Cf. *Ingraham*, 430 U.S. at 672, 97 S.Ct. 1401, 51 L.Ed.2d 711; *Hampton*, 425 U.S. at 490, 96 S.Ct. 1646, 48 L.Ed.2d 113.

{¶ 15} Indeed, the Sixth Circuit Court of Appeals has stated that a "violation of a fundamental right * * * is necessary for a successful substantive due process claim." *Perry*, 209 F.3d at 609. See, also, *Gutzwiller*, 860 F.2d at 1328. But the Sixth Circuit has recently observed the following when undertaking a substantive-due-process analysis:

The first (and often last) issue in this area is the proper characterization of the individual's asserted right. *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). Governmental actions that infringe a fundamental right receive strict scrutiny. *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir.2000).

Otherwise, they receive rational-basis review, which requires them only to be "rationally related to a legitimate state interest." *Id.* at 575.

*Blau v. Fort Thomas Pub. School Dist.* (C.A.6, 2005), 401 F.3d 381, 393. See, also, *United States v. Brandon* (C.A.6, 1998), 158 F.3d 947, 956 (observing that if the government's action does not burden a fundamental right, it will survive a substantive-due-process challenge if it is rationally related to a legitimate governmental interest); *Valot v. Southeast Local School Dist. Bd. of Edn.* (C.A.6, 1997), 107 F.3d 1220, 1228 ("Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest"); *Pearson v. Grand Blanc* (C.A.6, 1992), 961 F.2d 1211, 1216 (stating that the term "substantive due process" has been used in the context of application of rights enumerated in the United States Constitution to a state and in the application of a right unenumerated in the United States Constitution to a state).

{¶ 16} Moreover, in *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 706 N.E.2d 323, the Supreme Court of Ohio stated:

In *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 354, 639 N.E.2d 31, 34, we set out the standards for substantive due process under each Constitution, when a fundamental right is not involved.

"Under the Ohio Constitution, an enactment comports with due process 'if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary.' *Benjamin v. Columbus* (1957), 167 Ohio St. 103, 110, 4 O.O.2d 113, 117, 146 N.E.2d 854, 860, citing *Piqua v. Zimmerlin* (1880), 35 Ohio St. 507, 511. Federal due process is satisfied if there is a rational relationship between a statute and its purpose. *Martinez v. California* (1980), 444 U.S. 277, 283, 100 S.Ct. 553, 558, 62 L.Ed.2d 481, 488."

Id. at 545, 706 N.E.2d 323.

{¶ 17} Accordingly, based upon our review of relevant case authority, we find well taken the state's argument that our resolution of its second assignment of error merely implicated that strict-scrutiny review was not applicable. Therefore, we now modify our resolution of the state's second assignment of error and overrule it, wherein the state asserted that, absent a cognizable due-process interest, the trial court erred in finding a due-process violation.

{¶ 18} Having already found that defendant's classification as a sexually oriented offender does not implicate a fundamental constitutional right and that strict-scrutiny review is not implicated, we therefore must consider whether the state's classification of defendant is rationally related to a legitimate state interest or whether there is "reasonable fit" between the state's purpose and the

means chosen to advance that purpose. See, e.g., *Reno,* 507 U.S. at 305, 113 S.Ct. 1439, 123 L.Ed.2d 1; *Blau,* 401 F.3d at 393; and *Desenco, Inc.,* 84 Ohio St.3d at 545, 706 N.E.2d 323.

{¶ 19} In our decision, we concluded that defendant was denominated a "sexually oriented offender" by operation of law following his 1997 conviction. *Small,* 162 Ohio App.3d 325, 2005-Ohio-2291, 833 N.E.2d 736, at ¶ 16. Because defendant was denominated a sexually oriented offender in 1997, a plausible argument can be raised that defendant should have challenged his classification as a sexually oriented offender in a direct appeal following his 1997 conviction instead of raising this challenge in a motion to dismiss a later indictment, wherein it was alleged that defendant failed to provide notice of change of address and verify his address as required by R.C. 2950.05 and 2950.06. However, in its 1997 judgment, the trial court indicated only that defendant was not a sexual predator. Absent from this judgment was a judicial determination that defendant was a sexually oriented offender. Because the 1997 judgment failed to provide judicial notice to defendant that he was classified as a sexually oriented offender, we conclude that defendant's challenge of his classification as a sexually oriented offender through a motion to dismiss a later indictment was properly raised and not untimely.

{¶ 20} In his motion to dismiss before the trial court, defendant asserted, among other things, that the state's prosecution violated due process under both state and federal constitutions as applied to him. " 'If a statute is unconstitutional as applied, the State may continue to enforce that statute in different circumstances where it is not unconstitutional * * * .' " *Small,* 162 Ohio App.3d 325, 2005-Ohio-2291, 833 N.E.2d 736, at ¶ 19, quoting *Women's Med. Professional Corp. v. Voinovich* (C.A.6, 1997), 130 F.3d 187, 193. " 'In an as-applied challenge, "the plaintiff contends that application of the statute in the particular context in which he acted, or in which he proposes to act, would be unconstitutional." ' " Id., quoting *Ada v. Guam Soc. of Obstetricians & Gynecologists* (1992), 506 U.S. 1011, 113 S.Ct. 633, 121 L.Ed.2d 564 (Scalia, J., dissenting).

{¶ 21} "If a party challenges a statute on the ground that it is unconstitutional as applied to a particular set of facts, 'the burden is upon the party making the attack to present clear and convincing evidence of a presently existing state of facts which makes the Act unconstitutional and void when applied thereto.' " Id. at ¶ 20, quoting *Cleveland Gear Co. v. Limbach* (1988), 35 Ohio St.3d 229, 231, 520 N.E.2d 188, citing *Belden v. Union Central Life Ins. Co.* (1944), 143 Ohio St. 329, 28 O.O. 295, 55 N.E.2d 629, paragraph six of the syllabus. See, also, *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus (defining "clear and convincing" quantum of proof).

{¶ 22} In *State v. Bowman*, Franklin App. No. 02AP–1025, 2003-Ohio-5341, 2003 WL 22290183, ¶ 29, relying upon *State v. Cook* (1998), 83 Ohio St.3d 404, 417, 700 N.E.2d 570, this court observed that "R.C. Chapter 2950 arguably bears some rational relation to a legitimate state interest because it seeks to protect the safety and general welfare of the citizenry."

{¶ 23} Here, defendant contends that, in the absence of any sexual motivation, denominating defendant a "sexually oriented offender" is not rationally related to a legitimate state interest as applied to him, and, furthermore, there is no rational basis to subject him to registration requirements and prosecution for failure to register. The state maintains that protection of children and society is a legitimate state interest, and a system of registration for child abductors and child kidnappers rationally furthers that interest.

{¶ 24} In determining that R.C. Chapter 2950 was neither impermissibly retroactive nor an ex post facto law, the Supreme Court of Ohio provided a history and overview of R.C. Chapter 2950. *Cook*, 83 Ohio St.3d at 405–409, 700 N.E.2d 570. The Supreme Court stated:

The General Assembly, in repealing and reenacting R.C. Chapter 2950, stated that its intent was "to protect the safety and general welfare of the people of this state." R.C. 2950.02(B). The General Assembly stated that "[i]f the public is provided adequate notice and information about sexual predators, habitual sex offenders, and certain other offenders who commit sexually oriented offenses, members of the public and communities can develop constructive plans to prepare themselves and their children for the sexual predator's, habitual sex offender's, or other offender's release from imprisonment, a prison term, or other confinement. This allows members of the public and communities to meet with members of law enforcement agencies to prepare and obtain information about the rights and responsibilities of the public and the communities and to provide education and counseling to their children." R.C. 2950.02(A)(1).

Further, the General Assembly declared that "[s]exual predators and habitual sex offenders pose a high risk of engaging in further offenses even after being released from imprisonment, a prison term, or other confinement and that protection of members of the public from sexual predators and habitual sex offenders is a paramount governmental interest." R.C. 2950.02(A)(2). Finally, the General Assembly stated that "[a] person who is found to be a sexual predator or a habitual sex offender has a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government." R.C. 2950.02(A)(5).

Id. at 406–407, 700 N.E.2d 570; see, also, *Williams*, 88 Ohio St.3d at 530, 728 N.E.2d 342; R.C. 2950.02.

■ {¶ 25} Based upon *Cook, Williams,* and the plain language of R.C. 2950.02, we conclude that the legislature's intent in enacting R.C. Chapter 2950 was to alert the citizenry to the presence of sex offenders within their midst. Accord *State v. Barksdale,* Montgomery App. No. 19294, 2003-Ohio-43, 2003 WL 77115 ("The statute is intended to alert the public to the presence of sex offenders in their midst").

{¶ 26} In *Barksdale,* the defendant pleaded guilty to four counts of kidnapping that involved minors as victims. The parties stipulated that the offenses were committed without any sexual motivation or purpose. Thereafter, the trial court classified the defendant as a sexually oriented offender. On appeal, the defendant asserted a violation of due process under state and federal constitutions and a violation of equal protection under the law under state and federal constitutions. The Second District Court of Appeals found:

> [T]he requirement that [the defendant] be classified as a sexually oriented offender, and that he comply with the registration and reporting requirements pertaining to sexually oriented offenders, bears no rational relationship to the purposes of the statute and is unreasonable and arbitrary; we agree with [the defendant] that the requirement violates the Due Process clauses of the Ohio Constitution and of the Fourteenth Amendment to the United States Constitution.

Id. at ¶ 3.

{¶ 27} The Second District reasoned:

> [W]e have little doubt that the legislature could, if it wished, impose registration and reporting requirements for all convicted felons; or, the General Assembly could provide for registration and reporting requirements for felons who have committed offenses against children, upon the theory that children require additional measures to protect them; but it would be unreasonable and arbitrary to denominate these felons as "sexually oriented offenders" when their offenses involve no sexual motivation or purpose. The General Assembly might logically designate convicted felons whose offenses have been committed against minor victims as "child predators," and impose registration and reporting requirements upon them. This would be neither unreasonable nor arbitrary. Alternatively, the General Assembly, in its desire to provide additional protection for child victims of crime, might impose harsher sentences for offenses committed against children.
>
> Our problem with the application of the automatic, per se designation of certain offenses, which do not involve any inherent sexual motivation or purpose, as "sexually oriented offenses," in the absence of any sexual motivation or purpose, is that the labeling of these offenses as "sexually oriented offenses" is unreasonable and arbitrary.

* * *

In the case before us, the phrase "sexually oriented offense," is one that the average person can be expected to understand as referring to an offense that is committed with a sexual motivation or purpose. The labeling of certain offenses having no sexual motivation or purpose as "sexually oriented offenses" confounds this ordinary understanding of the words used, and is therefore unreasonable and arbitrary.

*Barksdale,* 2003-Ohio-43, at ¶ 21, 22, and 24; see, also, *State v. Reine,* Montgomery App. No. 19157, 2003-Ohio-50, 2003 WL 77174.

{¶ 28} In *Reine,* the defendant pleaded guilty to four counts of kidnapping that involved minors as victims. The parties stipulated that the offenses were committed without any sexual motivation or purpose. Thereafter, the trial court classified the defendant as a sexually oriented offender. On appeal, the defendant asserted a violation of due process under the state and federal constitutions. Employing language and reasoning that was nearly identical to its decision in *Barksdale,* which was decided on the same day, the Second District Court of Appeals concluded that the requirement that the defendant be classified as a sexually oriented offender and the mandatory registration and reporting requirements under R.C. Chapter 2950 as applied to the defendant violated due process under the state and federal constitutions.

{¶ 29} Upon further consideration, finding the reasoning in *Barksdale* and *Reine* to be persuasive, we agree with defendant that, absent evidence that he committed the kidnapping of the minor victim with sexual motivation, denominating defendant a "sexually oriented offender" is not rationally related to a legitimate state interest as applied to defendant under former R.C. Chapter 2950. Moreover, absent evidence that defendant committed the kidnapping of the minor victim with sexual motivation, there is no rational basis to subject him to registration requirements and prosecution for failure to register under former R.C. Chapter 2950.

{¶ 30} Accordingly, upon reconsideration, we hold that the trial court did not err in determining that the denomination of defendant as a "sexually oriented offender" lacked a rational basis under substantive due process as applied to defendant. Having made that determination, we therefore overrule the state's third assignment of error, wherein it asserted that the trial court erred by determining that the label "sexually oriented offender" lacked a rational basis under due process as applied to defendant. Furthermore, for the reasons discussed earlier, we modify our disposition of the state's second assignment of error.

{¶ 31} In our decision, because we concluded that our resolution of the state's second assignment of error was dispositive, we did not consider the state's first,

third, and fourth assignments of error. *Small,* 162 Ohio App.3d 325, 2005-Ohio-2291, 833 N.E.2d 736, ¶ 26. Here, however, upon reconsideration, we have concluded that our resolution of the state's second assignment of error was not dispositive, and we have overruled the state's third assignment of error. Accordingly, we now address the state's remaining assignments of error.

{¶ 32} In its first assignment of error, the state asserts that (1) the trial court erred when it found that defendant "asserted" a lack of sexual motivation involving his 1997 conviction and (2) the trial court erred when it concluded that the parties entered into a stipulation.

{¶ 33} In its findings of fact, the trial court stated: "Defendant has asserted that he neither removed the child from the vehicle nor caused him harm, sexual or otherwise." The state correctly points out that defendant did not testify at the hearing wherein defendant's motion to dismiss was considered. However, the gravamen of defendant's argument is that the facts underlying his 1997 conviction do not indicate that he kidnapped the minor child with intent to inflict harm of a sexual nature. Accordingly, we find that no prejudicial error occurred here. See, generally, Crim.R. 52(A) (providing that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded").

{¶ 34} In its conclusions of law, the trial court stated: "In the case sub judice, counsel for Defendant and counsel for the State have stipulated that the offense was not committed with the purpose of sexual gratification and that there was no sexual abuse."

{¶ 35} "Stipulation" may be defined as "a voluntary agreement, admission, or concession, made in a judicial proceeding by the parties *or their attorneys* concerning disposition of some relevant point so as to eliminate the need for proof or to narrow the range of issues to be litigated." *Baum v. Baum* (Nov. 26, 1997), Wayne App. No. 97CA0022, 1997 WL 775770. (Emphasis sic.) See, also, *Fairborn v. Oost* (Jun. 26, 1998), Greene App. No. 97 CA 107, 1998 WL 336775, quoting Black's Law Dictionary (Abridged) (6th Ed.1991).

{¶ 36} Based upon our review of the record, we find that the parties did not enter into a stipulation. Therefore, to this limited extent, the state's contention is well taken in that the trial court erroneously concluded that the parties had entered into a stipulation.

{¶ 37} However, during the state's argument at the hearing to consider defendant's motion to dismiss, wherein the state discussed the statutory scheme then in effect, the following exchange occurred:

MR. BOKELMAN [Assistant Prosecutor]: * * *

The state could have easily titled that differently and created a new subsection for people who kidnap children, or abduct children, or any of the other offenses that are listed there as a sexually-oriented offender. They just chose to give it that label to still get that protected goal.

THE COURT: The difficulty with the argument in this case is this. 2950 is entitled: Sexual Predators, Habitual Sexual Offenders, Sexually Oriented Offenders. Those individuals or offenders are described in here very clearly. The thrust of the statute is to make sure that the public knows the whereabouts of people who commit sexually-oriented or sexual offenses. Mr. Small didn't commit a sexual offense.

MR. BOKELMAN: That we know of.

THE COURT: There is nothing on this record that would entitle me to make a determination that he committed a sexual offense.

{¶ 38} Here, the trial court extended an invitation to the state to provide argumentation to support a contention that defendant's 1997 kidnapping conviction was sexually motivated. The assistant prosecutor's statement that defendant did not commit a sexual offense "[t]hat we know of" falls short of demonstrating that defendant's 1997 conviction was sexually motivated, especially in view of the state's representations to the trial court at the time of defendant's sentencing in 1997 wherein the assistant prosecutor discussed no sexual motivation or sexually offensive conduct by defendant.[1]

{¶ 39} Notwithstanding the trial court's erroneous conclusion that the parties entered into a stipulation, under the specific facts of this case, we conclude the trial court's error was harmless. See Crim.R. 52(A).

{¶ 40} Accordingly, for the foregoing reasons, the state's first assignment of error is overruled.

{¶ 41} In its fourth assignment of error, the state asserts: "The trial court erred in dismissing the indictment, since the application of registration and verification laws to even non-sexual child kidnappers is constitutional, the 'sexually oriented offender' label notwithstanding."

{¶ 42} Here, the state suggests that, rather than dismissing the indictment against defendant, the trial court could have corrected any potential confusion

---

1. To a supplemental memorandum in support of his motion to dismiss, defendant attached an unauthenticated copy of the transcript of the 1997 sentencing hearing. In the trial court, the state did not object to this evidence, nor did it move to strike this evidence. Accordingly, absent any objection, we hold that the trial court in its discretion properly could consider the transcript of the 1997 sentencing hearing, and this court properly may consider this evidence. See, e.g., *Smith v. Ruben* (Aug. 16, 2001), Franklin App. No. 00AP–1320, 2001 WL 921318, fn. 4; *Oakley v. Reiser* (Dec. 21, 2001), Athens App. No. 01CA40, 2001 WL 1646687, fn. 2.

regarding defendant's denomination as a "sexually oriented offender" by issuing a disclaimer that indicated that defendant's 1997 kidnapping conviction qualified as a "sexually oriented offense," even though there was no evidence that defendant committed the kidnapping with a sexual purpose.

{¶ 43} Because we have already held that absent any evidence that defendant kidnapped his minor victim with a sexual purpose, defendant's denomination as a "sexually oriented offender" and the requisite registration requirements based upon defendant's status as a "sexually oriented offender" violated substantive due process as applied to defendant, the state's fourth assignment of error is not persuasive, as it presupposes that defendant's "as applied" constitutional challenge is not meritorious. In *Barksdale*, 2003-Ohio-43, the Second District Court of Appeals observed:

> [T]he phrase "sexually oriented offense," is one that the average person can be expected to understand as referring to an offense that is committed with a sexual motivation or purpose. The labeling of certain offenses having no sexual motivation or purpose as "sexually oriented offenses" confounds this ordinary understanding of the words used, and is therefore unreasonable and arbitrary.

See, also, *Reine*, 2003-Ohio-50 at ¶ 24.

{¶ 44} Issuing a disclaimer that indicates defendant's 1997 kidnapping conviction qualified as a "sexually oriented offense" absent any evidence that defendant committed the kidnapping with a sexual purpose is inconsistent with the purpose of the statutory scheme of R.C. Chapter 2950, which was intended to alert the public to the presence of sex offenders in their midst.

{¶ 45} The Supreme Court of Ohio has stated, "In the absence of a constitutional concern * * * the judiciary's function is to interpret the law as written by the General Assembly. ' "[T]he legislature is the final arbiter of public policy, unless its acts contravene the state or federal Constitutions." ' " *Beagle v. Walden* (1997), 78 Ohio St.3d 59, 62, 676 N.E.2d 506, quoting *State v. Kavlich* (1986), 33 Ohio App.3d 240, 246, 515 N.E.2d 652 (Markus, C.J., concurring). Here, we have found a constitutional concern regarding the denomination of defendant as a "sexually oriented offender" absent any evidence that defendant committed the kidnapping of a minor with a sexual purpose or motivation.

{¶ 46} Indeed, the General Assembly in 2003 Am.Sub.S.B. No. 5 appeared to have recognized the inconsistency of denominating persons who kidnap child victims absent any evidence of sexual motivation or purpose as "sexually oriented offenders" by creating a new category in R.C. 2950.01, "child-victim oriented

offense," which includes violations of division (A)(1), (2), (3), or (5) of R.C. 2905.01[2] when the victim is under 18 years of age and by defining a "sexually oriented offense" as including a violation of division (A)(4) of R.C. 2905.01 when the victim is under 18 years of age. See sections 1 and 3 of 2003 Am.Sub.S.B. No. 5.

{¶ 47} Therefore, for the foregoing reasons, we overrule the state's fourth assignment of error.

{¶ 48} Accordingly, having overruled the state's first, second, third, and fourth assignments of error, we therefore (1) grant defendant's application to reconsider our decision and (2) affirm the judgment of the Franklin County Court of Common Pleas granting defendant's motion to dismiss an indictment. Furthermore, having affirmed the trial court, we sua sponte vacate our previous order remanding the cause to the trial court to consider defendant's equal protection claim.

Application for reconsideration granted,
judgment affirmed, and order vacated.

KLATT and DESHLER, JJ., concur.

DESHLER, J., retired of the Tenth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.

---

**2.** R.C. 2905.01, effective July 1, 1996, provides:·

(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

(1) To hold for ransom, or as a shield or hostage;

(2) To facilitate the commission of any felony or flight thereafter;

(3) To terrorize, or to inflict serious physical harm on the victim or another;

(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will;

(5) To hinder, impede, or obstruct a function of government, or to force any action or concession on the part of governmental authority.