[Cite as *State v. Lucas*, 2013-Ohio-544.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0070** |
| BRIAN K. LUCAS, JR., | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R 2012 TRC 3029.

Judgment: Reversed and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Dennis Day Lager*, Portage County Public Defender, and *John P. Laczko*, Assistant Public Defender, 209 South Chestnut Street, Suite 400, Ravenna, OH 44266 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} The state of Ohio appeals from a judgment of the Portage County Municipal Court, Ravenna Division, which granted appellee, Brian K. Lucas, Jr.'s, motion to suppress the results of his Intoxilyzer 8000 test results. This court's recent precedents on this issue have established that, while the Intoxilyzer machine is presumed reliable, a defendant may raise specific issues related to the machine's reliability. The burden is on the defendant to produce evidence to rebut the

presumption and establish that the machine used in the test was unreliable. Based on these principles, we reverse the trial court's judgment granting the motion to suppress and remand the matter for further proceedings consistent with this opinion.

{¶2} On March 10, 2012, a police officer stopped appellee's vehicle for driving a vehicle with no illuminated rear plate and no visible or displayed front plate on State Route 43. The officer noticed a strong odor of alcohol and observed appellee's eyes were red and glassy. After appellee failed the field sobriety tests, the officer arrested him for driving under the influence. A breath test was administered at the police station, which showed appellee's blood alcohol concentration was 0.087. He was cited for operating his vehicle under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(d).

{¶3} Appellee pled not guilty to these charges and filed a motion to suppress the results of his breath test. After a hearing, the trial court granted the motion to suppress, ruling that the breath test results would not be admissible during the trial. The trial court held that the state was required to present evidence to establish the scientific reliability of the Intoxilyzer 8000 as a threshold matter for the admissibility of the machine's test results.

{¶4} The state timely appealed from the trial court's judgment, presenting the following issue for our review:

{¶5} "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

2

**{¶6}** We review a trial court's legal determinations at a suppression hearing de novo. *State v. Djisheff*, 11th Dist. No. 2005-T-0001, 2006-Ohio-6201, ¶19.

**{¶7}** The issue raised in this appeal is identical to the issue raised in *State v. Rouse*, 11th Dist. No. 2012-P-0030, 2012-Ohio-5584; *State v. Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583; and *State v. Johnson*, 11th Dist. No. 2012-P-0008, 2013-Ohio-440.

**{¶8}** In these decisions, we recognized the Ohio General Assembly has given the Director of Health the authority to determine techniques for chemically analyzing a person's breath in order to ascertain the amount of alcohol contained in the person's breath. R.C. 3701.143. R.C. 4511.19(D)(1) requires breath samples be analyzed for alcohol content "in accordance with methods approved by the director pursuant to R.C. 3701.143." The director has approved the Intoxilyzer 8000 as an evidential breath testing instrument. OAC 3701-53-02(A)(3).

**{¶9}** In these decisions, we followed *State v. Vega*, 12 Ohio St.3d 185 (1984). The issue before the *Vega* Court was whether the defendant may use expert testimony to attack the general reliability of intoxilyzers in light of R.C. 4511.19 which provided for the admission of the test results if the tests are analyzed according to methods approved by the director. The *Vega* Court held that "an accused is not denied his constitutional right to present a defense nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the reliability of intoxilyzers in general." *Id.* at 186.

3

{¶10} Applying *Vega*, we held that while a general attack on the reliability of the Intoxilyzer is prohibited, the statutory presumption of reliability is nonetheless rebuttable. *See Johnson* at ¶32; *Rouse* at ¶36.

{¶11} A defendant is therefore entitled to challenge the specific breath test results based on specific alleged deficiencies in the testing equipment; the burden, however, is on the defendant to come forward with evidence sufficient to overcome the presumption afforded to the Director of the Ohio Department of Health as determined by the Ohio Supreme Court in *Vega*. *Rouse* at ¶39. In light of the evidence produced at the hearing, the trial court may then determine whether to admit the breath test device. *Johnson* at ¶32.

{¶12} In *Johnson*, we expressed the reservations that neither R.C. 3701.143 nor the administrative code sets forth an objective standard enabling a defendant or the courts to understand the criteria used by the director, if any, in approving the selected breath test instruments. *Id*. at ¶26. However, we recognize we are bound by *Vega*, which appears to have judicially determined that the director's placement of the breath testing instrument on the approved list creates a presumption of its general reliability. *Id*. at ¶27. The trial judge's gate-keeper function in the admission of evidence remains, pursuant to *Daubert v. Dow Merrell*, 506 U.S. 738 (1983). However, the judge must still be satisfied that the test result is scientifically reliable when a defendant comes forward with evidence challenging the reliability of his test results based on specific alleged defects in the testing equipment. *See Rouse, supra, passim.*

4

{¶13} The state's assignment of error is with merit.

{¶14} For the foregoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, is reversed, and the matter is remanded for proceedings consistent with this opinion.

CYNTHIA WESTCOTT RICE, J., concurs,

THOMAS R. WRIGHT, J., dissents with Dissenting Opinion.

_____

THOMAS R. WRIGHT, J., dissents with Dissenting Opinion.

{¶15} R.C. 4511.19(D)(1)(b) does not mandate admissibility of breath test results derived from the Intoxilyzer 8000. Rather, that statute which, by its plain language controls the issue in this case, vests the trial court with discretion regarding admissibility despite approval from the director. I, therefore, respectfully dissent.

{¶16} R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C. 4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results.

{¶17} R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent

5

offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation[,]" and "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code."  (Emphasis added.)

**{¶18}** The statute does not use the word "shall," which would mandate admission regardless of the circumstances.  Rather, the statute uses the word "may." For purposes of statutory construction, "use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *State v. Suchevits*, 138 Ohio App.3d 99, 102 (11th Dist. 1999).

**{¶19}**  In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C. 4511.19(D)(1)(b).  As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court.  *Knott v Revolution Software Inc.*, 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45 (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974,

6

*7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

{¶20} Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

{¶21} "Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.' (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available." *State v. Small,* 162 Ohio App.3d 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F. 2d. 1317, 1328 (6th Cir. 1989).

{¶22} However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; "[substantive] * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence." *Barefoot v. Estelle,* 463 U.S. 880, 931, fn. 10 (1983).

{¶23} The trial court was aware that other courts had deemed the Intoxilyzer 8000 unreliable even though it was approved. Against the backdrop, the court ordered the state to establish the general reliability of the Intoxilyzer 8000 before admitting the results. Given the constitutional gravity of admitting unreliable results, however, and its statutory authority to act as gatekeeper regarding breath test results, the lower court's

7

decision to require the state to produce evidence of the machines reliability was an eminently reasonable and sound legal decision. "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

**{¶24}** Rather than present evidence of the general reliability of the Intoxilyzer 8000, the state took the position that the trial court could not require it to do so pursuant to *Vega* and its progeny. *Vega*, 12 Ohio St.3d 185 (1984). I do not read *Vega* as holding that under no circumstances can a trial court exercise its discretion to require evidence of general reliability of an approved breath testing device as a condition to admissibility.

**{¶25}** In *Vega,* the court held "* * * an accused is not denied his constitutional right to *present a defense* nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the *reliability of intoxilyzers in general*." (Emphasis added.) *Id.* at 186.

**{¶26}** Threshold admissibility was not at issue in *Vega.* That is, the defendant made no challenge to the trial court's admission of his breath test result. Instead, after the state presented its case and rested, the defendant attempted to present a "reliability" defense by attacking intoxilyzers in general. *See also State v. Vega*, 5th Dist. No. CA-1766, 1993 Ohio App. LEXIS 14350, *16 (Nov. 22, 1983)(Hoffman, J., dissenting). Unlike *Vega*, 12 Ohio St.3d 185, threshold admissibility is the issue in the case before us. Moreover, unlike *Vega*, our case is not about the reliability of intoxilyzers in general. Our case is limited to whether the Intoxilyzer 8000 is reliable. In

8

short, the circumstances at issue in *Vega* were fundamentally distinguishable from those in our case.

**{¶27}** Additionally, the rule in *Vega* does not contemplate a situation where, as here, an approved device's general reliability has been assessed by other courts for both use in and out of this state and the device's reliability has been found suspect. *See State v. Johnson*, Portage County Municipal Court, January 6, 2012. *Vega* expressly states that its holding does not involve a situation where there was an assertion that there was an abuse of discretion by the director in approving the breath testing device at issue. *Vega* at 187, fn. 2. Obviously, in our case if the Intoxilyzer 8000 is unreliable, approval would amount to an abuse of discretion and admission of the test results a violation of substantive due process.

**{¶28}** Breath tests are "'* * * generally recognized as being reasonably reliable on the issue of intoxication when conducted *with proper equipment* and by competent operators.'" (Emphasis added.) *Vega* at 186, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121, 128(1968). Thus, the central issue as presented in the case before us, does the Intoxilyzer 8000 qualify as "proper equipment"? The answer is "yes" if it is generally reliable and "no" if it is not. This is a query, however, that, under Ohio law, a trial court is entitled to resolve pursuant to R.C. 4511.19(D)(1)(b).

**{¶29}** In this case, the trial court exercised its discretion to safeguard the defendant's right to substantive due process by merely requiring the state to show the Intoxilyzer 8000 is generally reliable. Under the circumstances, this decision was sound and reasonable. This is particularly true in light of the fact that a trial court is vested with broad discretion in the admission or exclusion of evidence and in recognition that it

9

has inherent power to exclude or strike evidence *on its own motion*. *Caroll v Caroll*, 7th Dist. No. 89-C-1, 1990 Ohio App. LEXIS 1339, *8 (April 5, 1990); *Neil v. Hamilton County*, 87 Ohio App.3d 670; *Oakbrook Realty Corp. v. Blout*, 48 Ohio App.3d 69, 70 (10th Dist. 1988).

**{¶30}** Given the foregoing point, there is no reason to remand this case to the trial court based upon perceived inadequacies in the motion to suppress. The trial court made it abundantly clear that it would not admit the test results absent proof of reliability of the Intoxilyzer 8000. Requiring the proponent to establish the reliability of scientific evidence is something that a trial court *may require* as previously discussed. The state was well aware of what the trial court required when it ordered it to produce evidence of the Intoxilyzer 8000's reliability, independent and irrespective of the contents of the motion to suppress. Accordingly, there is no procedural due process violation of the state's right to notice and an opportunity to be heard. The trial court's order was unambiguous and an exercise of the sound discretion as the gatekeeper of breath test result admissibility.

**{¶31}** When an appellate court is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, quoting *Beechler*, 2010-Ohio-1900 at ¶67.

{¶32} This appeal is centered around a discretionary decision made by the trial court. As I find the court's decision not only reasonable, but constitutionally astute, I would affirm the trial court's exclusion of the breath test in light of the state's refusal to present evidence on the issue.