[Cite as *State v. Tringelof*, 2019-Ohio-5033.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2019-03-021 |
| | | CA2019-03-022 |
| | : | |
| - vs - | : | O P I N I O N |
| | : | 12/9/2019 |
| MICHAEL TRINGELOF, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case Nos. 2012CR0589 and 2012CR0590


D. Vincent Faris, Clermont County Prosecuting Attorney, Nick Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

George A. Katchmer, 1886 Brock Road N.E., Bloomingburg, Ohio 43106, for appellant


**HENDRICKSON, P.J.**

{¶ 1} Michael Tringelof appeals the decision of the Clermont County Common Pleas Court, which classified him as a sexual predator under Megan's Law. For the reasons discussed below, this court affirms the decision.

{¶ 2} In 2012, Clermont County grand jurors indicted Tringelof on 34 counts, including charges of kidnapping, abduction, and endangering children. Every kidnapping

count included a specification finding that Tringelof committed the offense with a sexual motivation. The charges stemmed from allegations that Tringelof lured eight children into the basement of his home, bound or restrained them, and then tortured them by poking them with sharp objects or shocking them with battery-powered devices. The offenses occurred between 1998 and 2005.

{¶ 3} In 2012, as part of a negotiated plea agreement, Tringelof pled guilty to eight of the kidnapping counts. The court thereafter sentenced Tringelof to an agreed sentence of 20 years in prison. The court also classified Tringelof as a Tier III sex offender.

{¶ 4} Tringelof did not file a direct appeal. Four years later, Tringelof moved the court to withdraw his guilty pleas. The trial court denied the motion and Tringelof appealed. This court affirmed the trial court's decision, finding that Tringelof knowingly, intelligently, and voluntarily entered his guilty pleas. *State v. Tringelof*, 12th Dist. Clermont Nos. CA2017-03-015, CA2017-03-016, 2017-Ohio-7657, ¶ 20.

{¶ 5} While litigating Tringelof's motion to withdraw his pleas, the parties and trial court became aware that the court had erroneously classified Tringelof as a sex offender under the Adam Walsh Act. Because all of the offenses were committed prior to the effective date of the Adam Walsh Act, the court should have classified Tringelof under the applicable version of Megan's Law. The trial court thereafter scheduled a sexual classification hearing in May 2018.

{¶ 6} At the hearing, the contested issues were whether the state had proven that Tringelof had a sexual motivation for the kidnapping offenses and whether Tringelof was likely to commit one or more "sexually oriented offenses" in the future. *See* former R.C. 2950.01(E). The state elicited testimony from the investigating detective, who described the circumstances surrounding each child victim. Tringelof sometimes lured the children into his

home with bribes of baseball cards or boating trips. Other children came to the home expecting to play with Tringelof's children but instead found themselves alone with Tringelof.

{¶ 7} In each case, Tringelof would lead the child into the basement and then restrain the child using various implements, including zip ties, dog collars, or leather straps. The children were forced to suffer various methods of torture, including being poked in the feet with nails or other sharp objects and shocked or electrocuted with wires connected to battery-powered devices. None of the children described any overt sexual acts by Tringelof during the torture. Tringelof eventually released the children and some reported that he warned them not to tell anyone.

{¶ 8} Over Tringelof's objection, the detective testified concerning an additional alleged victim. This victim contacted police in 2012 to report that Tringelof had tortured and sexually assaulted him in 1986. The victim, who was approximately 11 years old in 1986, reported that Tringelof had lured him inside Tringelof's residence with the promise of playing a video game system. After playing video games for some time, Tringelof tied the victim to a chair, blindfolded him, and then began shocking him with a homemade battery-powered device. After shocking the victim, Tringelof placed his penis on various parts of the victim's body, including the legs, shoulder, and face. Tringelof released the victim but threatened to kill him and his family if he told anyone.

{¶ 9} On a second occasion, about a week later, Tringelof approached the victim as the victim got off a school bus. Tringelof invited the victim into his home and the victim stated he felt he had to accept, or his family would be harmed. They played Legos until Tringelof again restrained the victim and began to beat him with a paddle. Tringelof then removed the victim's pants and placed "wax paper" on the victim's buttocks. Tringelof placed his penis on the paper and began rubbing until he ejaculated. Tringelof would have been approximately

18 years old at the time of these incidents. The state never pursued charges with respect to the 1986 victim and the record indicates this may partially have been the result of concerns over the statute of limitations.

{¶ 10} After speaking with the 1986 victim, police checked Tringelof's police record and noted that a ten-year-old child had reported being restrained and tortured in Tringelof's basement in 2005. That case was closed when the child's mother said she thought the child was lying.

{¶ 11} Police renewed that investigation and contacted the 2005 victim, who reiterated his claims. Police subsequently arrested Tringelof for the 2005 offense and local news coverage led to seven additional victims coming forward. The victims either lived in Tringelof's neighborhood or were friends with Tringelof's children.

{¶ 12} Also over Tringelof's objection, the court allowed the detective to testify as to his conversations with Tringelof's ex-wife. She reported that she and Tringelof engaged in bondage sex and that he would restrain her using specially-made hooks on their bed. During sex he would sometimes hurt her. She would ask him to stop and he would not. She reported that the only way he would "get off" would be for her to cry out in pain or indicate she was being hurt.

{¶ 13} The court admitted various exhibits submitted by the state, including the complete written police report, a document summarizing the abuse suffered by the victims, and Tringelof's "Static-99" report, which is a predictor of sexual recidivism. On a scale of 0 to 6, Tringelof scored a 4, which indicated a medium to high risk of sexual recidivism.

{¶ 14} Prior to the classification hearing, Tringelof submitted to a presentence investigation. The resulting report was provided to the trial court for its consideration. In responding to the investigator's question of what he did to get in trouble, Tringelof replied "I

tied up neighborhood kids." When asked why he would do this, Tringelof responded, "it was just something I did." Tringelof indicated he began this behavior when he was 15 years old. He acknowledged it was "messed up behavior" but did not think the children were harmed by his actions because they all thought it was a "funny game."

{¶ 15} The court later issued its decision, finding that Tringelof was likely to commit additional sexually oriented offenses based on the statutory factors. Former R.C. 2950.09(B). With respect to whether the kidnapping offenses were sexually motivated, the court noted that it found the evidence related to the 1986 victim and the ex-wife irrelevant. The court observed that the state had failed to produce any "independent facts" that would demonstrate a sexual motivation in the kidnapping offenses. Nonetheless, the court found the offenses were sexually motivated based on Tringelof's earlier pleas to the kidnapping counts as each count included a sexual motivation specification.

{¶ 16} The court noted that, while the plea paperwork did not specifically refer to the sexual motivation specifications, those specifications had not been dismissed and Tringelof would have been aware he was pleading guilty to both the specifications and the underlying offenses. Having concluded that Tringelof had pled guilty to sexually oriented offenses and was likely to commit additional sexually oriented offenses, the court classified him as a sexual predator under Megan's Law.

{¶ 17} Tringelof appeals, raising a single assignment of error.

{¶ 18} Assignment of Error No. 1:

{¶ 19} THERE CAN BE NO SEXUAL OFFENDER CLASSIFICATION IF THERE IS NO SEXUAL ACTIVITY.

{¶ 20} Tringelof argues that the court erred in classifying him as a sexual predator because the state failed to establish that he was convicted of a sexually oriented offense.

Specifically, Tringelof argues that the state submitted no evidence indicating any sexual motivation with regard to any of the kidnapping offenses. He contends that the only evidence indicating a sexual motivation was presented through unreliable hearsay evidence, i.e., the testimony and police report concerning the 1986 victim and Tringelof's ex-wife.

{¶ 21} This court's standard of review is premised on Megan's Law being a "a civil, remedial consequence of the conviction and not a punitive component of criminal sentencing." *State ex rel. Grant v. Collins*, 155 Ohio St.3d 242, 246, 2018-Ohio-4281, ¶ 17, citing *State v. Cook*, 83 Ohio St.3d 404, 417 (1998); *State v. Williams*, 88 Ohio St.3d 513, 528 (2000); *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 32; *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, at ¶ 36. The Ohio Supreme Court has held that this court reviews sex offender classifications under the civil-manifest weight standard, which tests whether the classification was supported by competent, credible evidence. *Wilson* at syllabus.

{¶ 22} The trial court could classify Tringelof as a sexual predator under Megan's Law based upon two findings: (1) that Tringelof had been convicted of or pled guilty to a sexually oriented offense and, (2) that he was likely to engage in the future in one or more sexually oriented offenses. Former R.C. 2950.01(E). In this appeal, Tringelof only challenges whether the state demonstrated that he was convicted of or pled guilty to sexually oriented offenses.

{¶ 23} Pursuant to the S.B. 5 amendments to Megan's Law, kidnapping was a sexually oriented offense if it was committed with a sexual motivation. *Collins* at ¶ 15.[1] Tringelof

---

1. In its decision, the trial court discussed whether the state was required to demonstrate a sexual motivation for the kidnapping offenses that predated the S.B. 5 amendments. In the H.B. 180 version of Megan's Law, kidnapping was a sexually oriented offense when the victim was a child regardless of whether there was a sexual motivation. *Collins* at ¶ 15. Some courts found that this aspect of Megan's Law violated due process. *State v. Small*, 162 Ohio App.3d 375, 2005-Ohio-3813, ¶ 30 (10th Dist.); *State v. Barksdale*, 2nd Dist. Montgomery No. 19294, 2003-Ohio-43. However, in its decision, the trial court presumed that the state was required to prove a

argues that the only evidence that would indicate a sexual motivation was presented through the detective's testimony and accompanying police report concerning the 1986 victim and the ex-wife's statements. However, the trial court specifically declined to consider this evidence, indicating that it found the evidence irrelevant. Instead, the court premised its decision on Tringelof's act of entering voluntary pleas to the eight counts of kidnapping, each of which was accompanied by a sexual motivation specification.

{¶ 24} On appeal, Tringelof did not discuss or assign error to the trial court's consideration of his pleas to the eight kidnapping counts. Instead, at oral argument, counsel indicated that this court should review the transcript of the classification hearing because the trial court discussed "problems" it had with Tringelof's plea.[2] However, the court later issued its decision finding that Tringelof committed sexually oriented offenses based upon his pleas. Thus, if the court had concerns at the classification hearing, it did not have those same concerns when it entered its decision. Tringelof has not appealed that issue to this court and it is therefore waived.

{¶ 25} Upon a thorough review of the record, we find no error in the court's decision to conclude that Tringelof pled guilty to sexually oriented offenses by entering pleas to the kidnapping counts. As observed by the trial court, Tringelof would have been on notice, both through the indictments and the bills of particulars, that the state had charged him with kidnapping with sexual motivation specifications. Those specifications were not dismissed when Tringelof entered his plea.

{¶ 26} Moreover, the trial court classified Tringelof a Tier III sex offender in 2012. At

sexual motivation for all counts regardless of the offense date, thus obviating this as an issue of potential dispute.

2. The "problems" were apparently the trial court's statement that it had reviewed the audio recording of the plea hearing and observed that there has been no specific discussion related to the sexual motivation specifications. Tringelof did not supply this court with a transcript of the plea hearing.

that time, the court had Tringelof sign a form explaining his duties to register as a sex offender following his release from prison. This form specifically informed Tringelof that "[y]ou have been convicted of or pleaded guilty to a sexually oriented offense and or child victim offense as defined in ORC 2950.01." Thus, Tringelof would or should have been aware that he pled guilty to sexually oriented offenses. Competent and credible evidence supports the trial court's decision that Tringelof pled guilty to sexually oriented offenses.

{¶ 27} Even if Tringelof was arguably unaware of the result of his pleas, the state submitted competent and credible evidence indicating that the kidnappings were sexually motivated. The Rules of Evidence do not strictly apply in sexual predator classification hearings because such hearings are treated similarly to sentencing or probation hearings. *Cook*, 83 Ohio St.3d at 425. As such, in determining whether to classify Tringelof as a sexual predator, the trial court could consider "reliable hearsay" as well as uncharged acts. *State v. Bolser*, 12th Dist. Butler No. CA2002-02-034, 2003-Ohio-1231, ¶ 16, citing *Cook* at 425; *State v. Austin*, 138 Ohio App.3d 547 (3d. Dist.2000); *State v. Lagow*, 12th Dist. Butler No. CA2001-06-144, 2002 Ohio App. LEXIS 507 (Feb. 11, 2002); *State v. Burgess*, 12th Dist. Fayette No. CA99-08-021, 2000 Ohio App. LEXIS 3059 (July 10, 2000).

{¶ 28} Initially, the very act of an adult luring children into the basement of a home for the purposes of restraining and torturing them is indicative of a sexual motivation. As observed by the 10th District Court of Appeals, it is a reasonable assumption that an adult who abducts an unrelated child is doing so for purposes of committing a sexual crime. *State v. Bowman*, 10th Dist. Franklin No. 02AP-1025, 2003-Ohio-5341, ¶ 32 (quoting the trial court, "the court can think of absolutely no reason in the world that you would take a young person out of a house in the middle of the night and spirit them away to a different location to do something other than a sexual act").

{¶ 29} However, the additional evidence offered by the state provided circumstantial and corroborating evidence to support the reasonable conclusion that Tringelof was sexually motivated. The 1986 victim provided the investigating detective with a detailed description of being lured into Tringelof's home and then being restrained, tortured, and molested. The methods described were largely identical to the methods independently described by the later child victims. In the presentence-investigative report, Tringelof confirmed he began torturing children in his teenage years, thus corroborating the 1986 victim's allegations. Although uncharged, the acts described by the 1986 victim were relevant to establishing that Tringelof restrained and tortured children for sexual pleasure. Tringelof's ex-wife's statements concerning his sexual proclivities was relevant to establish that control over a person and the infliction of pain were Tringelof's method of achieving sexual satisfaction. The Static-99 document indicated that Tringelof was prone to sexually violent activities and was a high to medium risk of re-offending. In conjunction with the underlying offenses, the circumstantial evidence offered some competent evidence to support the conclusion that the kidnapping offenses were sexually motivated.

{¶ 30} This court overrules Tringelof's sole assignment of error.

{¶ 31} Judgment affirmed.

RINGLAND and PIPER, JJ., concur.