[Cite as *State v. Lucarelli*, 2013-Ohio-1606.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0065** |
| LAURA ANN LUCARELLI, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R2012 TRC 2778.

Judgment: Reversed and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Dennis Day Lager*, Portage County Public Defender, and *Mark A. Carfolo*, Assistant Public Defender, 209 South Chestnut Street, #400, Ravenna, OH 44266 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1}    Plaintiff-appellant, the State of Ohio, appeals the judgment of the Portage County Municipal Court, Ravenna Division, holding the breath test results of the Intoxilyzer 8000 would not be admissible at trial in a prosecution for driving with a prohibited breath alcohol concentration (OVI). The issue before this court is whether a trial court, exercising its evidentiary role as gatekeeper, may pass judgment on the general reliability of a breath testing instrument where the Ohio director of health has

approved such instrument for determining the concentration of alcohol in a person's breath. For the following reasons, we reverse the decision of the court below.

{¶2} On March 3, 2012, the Ohio State Highway Patrol issued defendant-appellee, Laura Ann Lucarelli, a traffic ticket, charging her with OVI, a misdemeanor of the first degree in violation of R.C. 4511.19(A)(1)(a) (driving under the influence of alcohol) and (d) (driving with a prohibited breath alcohol concentration), and a Lanes of Travel violation, a minor misdemeanor in violation of R.C. 4511.25.

{¶3} On March 7, 2012, Lucarelli entered a plea of not guilty.

{¶4} On April 18, 2012, Lucarelli filed a Motion to Suppress, seeking "to suppress any and all evidence in this case, including tests." Inter alia, it was argued that "the Blood Alcohol Content test result from the Intoxilyzer 8000 is inadmissible and scientifically unreliable pursuant to State vs. Johnson (2012) in Portage County Municipal Court case 2011 TRC 04090."

{¶5} On June 6, 2012, a suppression hearing was held, at which the municipal court "limit[ed] its review of Defendant's Motion to Suppress solely to the admissibility of a BAC test from the Intoxilyzer 8000." The court ruled that "the State of Ohio was required to produce some relevant competent evidence to convince the Court that the test results from the Intoxilyzer 8000 are scientifically reliable and, therefore, admissible at trial." The State did not produce such evidence, but contended that "the legislature mandates the Court admit BAC results from this machine because the Ohio Department of Health has approved the Intoxilyzer 8000 in the State of Ohio," and the "Defendant is prohibited from challenging the general reliability of the machine at trial pursuant to *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303."

{¶6} On June 20, 2012, the municipal court issued a journal entry, granting Lucarelli's Motion to Dismiss: "the breath test results from the Intoxilyzer 8000 are not admissible at the trial of Defendant."

{¶7} On June 21, 2012, the State filed its Notice of Appeal.

{¶8} On June 25, 2012, the municipal court, upon the State's Motion, stayed execution of its judgment pending a decision on appeal.

{¶9} On appeal, the State raises the following assignment of error:

{¶10} "[1.] [The] Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶11} The appropriate standard of review where the lower court's judgment is challenged on a purported misconstruction of the law is de novo. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 16. "In determining a pure question of law, an appellate court may properly substitute its judgment for that of the trial court." (Citation omitted.) *Id.*

{¶12} As a preliminary matter, Lucarelli argues that the appealed judgment is not a final order, as it was "limited to an initial evidentiary ruling regarding the admissibility of the results of the Intoxilyzer 8000," and did not address the other "suppression issues" raised. Lucarelli's argument has been previously rejected by this court.

{¶13} The Ohio Supreme Court has held: "Any motion, however labeled, which, if granted, restricts the state in the presentation of certain evidence and, thereby, renders the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed, is, in effect, a

3

motion to suppress. The granting of such a motion is a final order and may be appealed pursuant to R.C. 2945.67 and Crim. R. 12(J) [now (K)]." *State v. Davidson*, 17 Ohio St.3d 132, 477 N.E.2d 1141 (1985), syllabus. Accordingly, "[a] pretrial challenge to a breathalyzer test, if granted, destroys the state's case under [former] R.C. 4511.19(A)(3) [prohibited breach alcohol concentration], and the state is permitted to appeal pursuant to R.C. 2945.67 and Crim. R. 12[(K)(2)]." *Defiance v. Kretz*, 60 Ohio St.3d 1, 4, 573 N.E.2d 32 (1991).

**{¶14}** In the present case, the municipal court's decision to exclude the breath test results of the Intoxilyzer 8000 "rendered the State's proof with respect to the pending charge, a violation of R.C. 4511.19(A)(1)(d), so weak in its entirety that any reasonable possibility of effective prosecution of R.C. 4511.19(A)(1)(d) has been destroyed." Prosecutor's Certification. Accordingly, it is a final order. *See State v. Miller*, 11th Dist. No. 2012-P-0032, 2012-Ohio-5585, ¶ 13-20.

**{¶15}** The State argues that, pursuant to Sections 3701.143 and 4511.19(D)(1)(b) of the Ohio Revised Code, and Ohio Administrative Code 3701-53-02(A)(3), a trial court is required to accept the Intoxilyzer 8000 as an appropriate device for chemically analyzing a person's breath to ascertain the amount of alcohol in the breath. As we have held in prior decisions, we agree. *State v. Rouse*, 11th Dist. No. 2012-P-0030, 2012-Ohio-5584; *Miller*.

**{¶16}** "In any criminal prosecution * * * for a violation of division (A) or (B) of [R.C. 4511.19] * * *, the court may admit evidence on the concentration of alcohol * * * in the defendant's * * * breath * * * at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the

4

alleged violation." R.C. 4511.19(D)(1)(b). "The bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." *Id.*

{¶17} "For purposes of section[] * * * 4511.19 * * * of the Revised Code, the director of health shall determine, or cause to be determined, techniques or methods for chemically analyzing a person's * * * breath * * * in order to ascertain the amount of alcohol * * * in the person's * * * breath * * *." R.C. 3701.143.

{¶18} The Ohio director of health has approved the "Intoxilyzer model 8000 (OH-5)" as an "evidential breath testing instrument[] for use in determining whether a person's breath contains a concentration of alcohol prohibited or defined by section[] 4511.19 * * * of the Revised Code." Ohio Adm.Code 3701-53-02(A)(3).

{¶19} Lucarelli contends that the use of permissive language in the OVI statute, i.e., the word "may" in the phrase "the court may admit evidence on the concentration of alcohol," recognizes the trial court's discretion to admit and to exclude evidence. According to Lucarelli, the court below could, but was not required to, admit the breath test results of the Intoxilyzer 8000.

{¶20} Consideration of Ohio Supreme Court decisions construing the relevant statutes compels a different conclusion. In light of these decisions, the trial court's discretion to admit or exclude evidence is restricted to determining whether the breath test was conducted "in accordance with methods approved by the director of health" and "by an individual possessing a valid permit." The court's discretion under R.C.

5

4511.19(D)(1)(b) does not permit it to exclude test results based on the "scientific accuracy and reliability" of the breath testing device, as was done in the present case.

{¶21} The lead Ohio Supreme Court case on this issue is *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984), in which the court addressed the issue of whether the general reliability of intoxilyzers could be challenged "in view of the fact that the General Assembly has legislatively provided for the admission of such tests in R.C. 4511.19 if analyzed in accordance with methods approved by the Director of Health." *Id.* at 186.[1]

{¶22} In *Vega*, the Ohio Supreme Court made clear that "an accused may not make a general attack upon the reliability and validity of the breath testing instrument." *Id.* at 190. The court explained that, by enacting R.C. 4511.19, the General Assembly "ha[s] legislatively resolved the questions of the reliability and relevancy of intoxilyzer tests." *Id.* at 188. "[The judiciary must recognize] the necessary legislative determination that breath tests, properly conducted, are reliable irrespective that not all experts wholly agree and that the common law foundational evidence has, for admissibility, been replaced by statute and rule; and that the legislative delegation was to the Director of Health, not the court, the discretionary authority for adoption of appropriate tests and procedures, including breath test devices." *Id.* at 188-189, citing *State v. Brockway*, 2 Ohio App.3d 227, 232, 441 N.E.2d 602 (4th Dist.1981).

{¶23} In subsequent decisions, the Ohio Supreme Court reaffirmed its holding in *Vega*. The court has emphasized that, when regulations are promulgated pursuant to

---

1. In *Vega*, the defendant sought to challenge the intoxilyzer's reliability through expert testimony presented at trial, whereas, in the present case the defendant seeks to exclude the intoxilyzer's test result by placing the burden on the State to prove reliability. The differing procedural posture of *Vega* is not material to the relevance of its holding for the present case.

R.C. 4511.19 and 3107.143, "it must be presumed that the Director of Health acted upon adequate investigation," and that the courts "must defer to the department's authority and * * * not substitute our judgment for that of the Director of Health." *State v. Yoder*, 66 Ohio St.3d 515, 518, 613 N.E.2d 626 (1993).

{¶24} Lucarelli maintains that trial courts must retain the discretion to refuse to admit such test results to "counter balance * * * the Department of Health's unfettered discretion in choosing instruments and promulgating rules for chemical tests." Under *Vega*, however, defendants are expressly allowed to demonstrate that "there was something wrong with the test and the results were erroneous." *Id.* at 189.

{¶25} When duly challenged, the State must demonstrate that the bodily substance was "analyzed in accordance with methods approved by the director of health" and "by an individual possessing a valid permit." R.C. 4511.19(D)(1)(b). *Vega* recognized that "[t]here is no question that the accused may * * * attack the reliability of the specific testing procedure and the qualifications of the operator," as well as present "expert testimony as to testing procedures at trial going to weight rather than admissibility." *Id.* at 189. Thus, "[t]he defendant may still challenge the accuracy of his specific test results, although he may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood alcohol levels." *State v. Tanner*, 15 Ohio St.3d 1, 6, 472 N.E.2d 689 (1984); *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, 933 N.E.2d 317, ¶ 27 (10th Dist.) ("while [supreme court precedent] permits evidentiary objections to the test results challenging issues such as competency, admissibility, relevancy, authenticity, and

credibility, it does not indicate that a challenge to the 'general reliability' is among the permissible challenges").

{¶26} In addition to attacks on the specific performance of a particular breath test in an individual defendant's case, a defendant may also make an attack on the reliability of the Intoxilyzer 8000 based on specific reasons. While the machine is presumed to be generally reliable, a defendant may raise specific issues related to its reliability in a motion to suppress, as opposed to general assertions that the State failed to prove its reliability, which is prohibited under *Vega*. *See Miller*, 2012-Ohio-5585, at ¶ 32.

{¶27} Accordingly, the application of *Vega* does not sacrifice a defendant's due process rights, as Lucarelli claims. Rather, a trial court retains its authority and responsibility to regulate the admission of test results. Where the State fails to demonstrate that it followed the procedures set forth by the director of health and/or that the operator was properly qualified, test results may be suppressed. A defendant may also challenge the accuracy of his specific test results at trial and with evidence going to the weight accorded the test results.

{¶28} Moreover, to interpret R.C. 4511.19(D)(1)(b) and *Vega* as urged by Lucarelli would frustrate the purpose of delegating the authority for approving methods of analyzing alcohol concentration in a person's bodily substance. If the general reliability of a particular instrument or method could be challenged despite its approval by the director of health, then all methods currently employed by law enforcement are vulnerable. Stated otherwise, if the results produced by the Intoxilyzer 8000 may be challenged, with the State bearing the burden of proving reliability through expert

testimony, then so could the results obtained from the Intoxilyzer 5000 and the various BAC DataMasters currently approved for use. In like manner, defendants could challenge previously approved techniques and methods such as gas chromatography and enzyme assays. Ohio Adm.Code 3701-53-03(A). Equally vulnerable to challenge would be the methods used for determining concentrations of controlled substances. Ohio Adm.Code 3701-53-03(B). Finally, law enforcement would be put in the untenable position of speculating what techniques or instruments might be acceptable to the courts, with the only recourse being trial and error and appeal throughout Ohio's more than 88 county and municipal jurisdictions.

{¶29} When Lucarelli's arguments have been raised in these other contexts, they have similarly been rejected. *See State v. Klintworth*, 4th Dist. No. 10CA40, 2011-Ohio-3553, ¶ 12 ("this court will not allow the defendant to us[e] expert testimony to attack the general reliability or general accuracy of a legislatively determined test procedure - urine testing - as a valid scientific means of determining blood alcohol levels") (citation omitted); *State v. Massie*, 2nd Dist. No. 2007 CA 24, 2008-Ohio-1312, ¶ 36 ("Massie's *Daubert* challenge [to the BAC DataMaster test results] * * * is forestalled by the 'legislative mandate recognized in *Vega*,' and the trial court properly limited Massie to the issue of his own test").

{¶30} Alternatively, it is argued that the delegation of authority to the director of health to approve testing methods and devices violates the separation of powers doctrine and infringes upon the trial court's regulation of the admission of expert testimony under Evidence Rule 702.

9

**{¶31}** "The supreme court shall prescribe rules governing practice and procedure in all courts of the state * * *. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Ohio Constitution, Article IV, Section 5(B). Thus, "the Ohio Rules of Evidence, which were promulgated by the Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution, must control over subsequently enacted inconsistent statutes purporting to govern evidentiary matters." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 491, 715 N.E.2d 1062 (1999). "In order to demonstrate the legislature infringed upon the judiciary's power to enact evidentiary rules appellant must demonstrate the legislation contradicts or is an attempt to supersede an existing evidentiary rule." *State v. Boczar*, 11th Dist. No. 2004-A-0063, 2005-Ohio-6910, ¶ 38. "When a statute does not conflict with a Rule of Evidence, a statute can control the admissibility of evidence." *State v. Cross*, 11th Dist. No. 2004-L-208, 2004-L-208, 2006-Ohio-1679, ¶ 21.

**{¶32}** The delegation of authority to the director of health to establish the appropriate methods for determining the amount of alcohol in a defendant's bodily substances does not conflict with any Rule of Evidence. Lucarelli refers to Evidence Rules 104(A) and 702; but nothing in these Rules establishes the trial court as the sole "gatekeeper" with respect to the general reliability of instruments measuring the concentration of alcohol in a person's bodily substances. On the contrary, Evidence Rule 102 states that "[t]hese rules shall not supersede substantive statutory provisions." The Staff Notes elaborate further by stating, "[t]he Rules of Evidence * * * are not an exhaustive compilation of the rules governing evidence questions, nor are the rules preemptive as to subjects that they do not address."

**{¶33}** The Ohio Supreme Court, in *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, expressly characterized R.C. 4511.19(D)(1) as a "three-paragraph gate-keeping statute." *Id.* at ¶ 20. Where R.C. 4511.19(D)(1) is satisfied, it does "no[t] matter under which portion of R.C. 4511.19(A) a person is charged, the state has the opportunity to offer the results of a 'bodily substance' test to show either impairment * * * or to show that the statutory concentrations of alcohol or drugs have been exceeded." *Id.* at ¶ 19.

**{¶34}** It has also been observed that "the legislature has created standards for the admissibility of evidence in many instances." *State v. Phipps*, 3rd Dist. No. 2-03-39, 2004-Ohio-4400, ¶ 12.[2]

**{¶35}** In a similar situation, the Ohio Supreme Court considered whether the General Assembly's authority statutorily provided for the admissibility of the results of field sobriety tests based on substantial compliance, rather than the strict compliance standard, based on common law, adopted by Ohio courts. The Supreme Court found no encroachment "on the exclusive rule-making authority of the judiciary." *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 22. While acknowledging that "[t]he trial judge is the guardian of the admissibility of evidence," the General Assembly, "through its deliberative process," could conclude "that failure to strictly comply with test procedures affects the evidentiary value of field sobriety tests but that substantial compliance will not result in the tests' exclusion," i.e., "that the tests

---

2. As examples, the Third District Court of Appeals noted: R.C. 2907.02(D) (limiting the admissibility of evidence regarding a victim's sexual activity in prosecutions for Rape); R.C. 4513.263(F) (limiting the permissible uses of evidence regarding the use of occupant restraining devices); R.C. 2925.51(A) (providing that laboratory reports constitute "prima-facie evidence of the content, identity, and weight" of controlled substances); and R.C. 2317.47 (providing for blood-grouping tests to determine identity or paternity).

are sufficiently reliable to be admissible by meeting a clear-and-convincing standard." *Id.* at ¶ 23.

**{¶36}** Concerns about the reliability of the results in the absence of strict compliance could be addressed by the defense on cross-examination. *Id.*

**{¶37}** Likewise in the present case, R.C. 3701.143 and R.C. 4511.19(D)(1) do not preempt the trial court's authority to rule on the admissibility of evidence, but rather delegate the preliminary determination regarding the scientific reliability of testing devices to the director of health. That determination is not conclusive as to the ultimate admissibility of the test results. As noted above, the State must demonstrate that the bodily substance was "analyzed in accordance with methods approved by the director of health." R.C. 4511.19(D)(1)(b). The defendant may always challenge the accuracy of his or her specific test results and the qualifications of the person administering the test and otherwise strive to discredit the weight to be given the specific test results. *Vega*, 12 Ohio St.3d at 189, 465 N.E.2d 1303; *Tanner*, 15 Ohio St.3d at 6, 472 N.E.2d 689.

**{¶38}** Finally, we reject Lucarelli's argument that the municipal court cannot take judicial notice of the Intoxilyzer 8000's reliability. Ohio Criminal Rule 44.1(A)(1) states that, "[j]udicial notice shall be taken of the rules of the supreme court of this state and of the decisional, constitutional, and public statutory law of this state." Administrative rules "enacted pursuant to a specific grant of legislative authority" have the "force and effect of law." *Doyle v. Ohio Bur. of Motor Vehicles*, 51 Ohio St.3d 46, 554 N.E.2d 97 (1990), paragraph one of the syllabus. Accordingly, the Ohio director of health's determination that the Intoxilyzer 8000 is an appropriate breath testing device is properly recognized as part of the statutory law of this State. *See State v. Canino*, 11th Dist. No. 2012-P-

12

0102, 2013-Ohio-551, ¶ 26 (the "judiciary must take notice that [intoxilyzer breath] tests, properly conducted, are reliable irrespective of disagreements among experts and that the results of such tests are admissible") (citation omitted).

{¶39} The State's sole assignment of error is with merit.

{¶40} For the foregoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, granting Lucarelli's Motion to Suppress Evidence, is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.


CYNTHIA WESTCOTT RICE, J., concurs,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.


_____


THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶41} R.C. 4511.19(D)(1)(b) does not mandate admissibility of breath test results derived from the Intoxilyzer 8000. Rather, that statute which, by its plain language controls the issue in this case, vests the trial court with discretion regarding admissibility despite approval from the director. I, therefore, respectfully dissent.

{¶42} R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human

13

fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C.4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results.

{¶43} R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation[,]" and "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code."  (Emphasis added.)

{¶44} The statute does not use the word "shall," which would mandate admission regardless of the circumstances.  Rather, the statute uses the word "may." For purposes of statutory construction, "use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *State v. Suchevits*, 138 Ohio App.3d 99, 102 (11th Dist. 1999).

{¶45} In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C.4511.19(D)(1)(b).  As reliability

14

presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v Revolution Software Inc.* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45 (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

**{¶46}** Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

**{¶47}** "Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.' (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available." *State v. Small,* 162 Ohio App.3d. 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F. 2d. 1317, 1328 (6th Cir. 1989).

**{¶48}** However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; "[substantive] * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence." *Barefoot v. Estelle,* 463 U.S. 880, 931, fn. 10 (1983).

15

**{¶49}** The trial court was aware that other courts had deemed the Intoxilyzer 8000 unreliable even though it was approved.  Against this backdrop, the court ordered the state to establish the general reliability of the Intoxilyzer 8000 before admitting the results.  Given the constitutional gravity of admitting unreliable results, however, and its statutory authority to act as gatekeeper regarding breath test results, the lower court's decision to require the state to produce evidence of the machines reliability was an eminently reasonable and sound legal decision.  "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'"  *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

**{¶50}** Rather than present evidence of the general reliability of the Intoxilyzer 8000, the state took the position that the trial court could not require it to do so pursuant to *Vega* and its progeny.  *Vega,* 12 Ohio St.3d 185 (1984).  I do not read *Vega* as holding that under no circumstances can a trial court exercise its discretion to require evidence of general reliability of an approved breath testing device as a condition to admissibility.

**{¶51}** In *Vega,* the court held "* * * an accused is not denied his constitutional right to *present a defense* nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the *reliability of intoxilyzers in general.*" (Emphasis added.)  *Id*. at 186.

**{¶52}** Threshold admissibility was not at issue in *Vega.*  That is, the defendant made no challenge to the trial court's admission of his breath test result.  Instead, after the state presented its case and rested, the defendant attempted to present a

16

"reliability" defense by attacking intoxilyzers in general. *See also State v. Vega,* 5th Dist. No. CA-1766, 1993 Ohio App LEXIS 14350, *16 (Nov.22, 1983)(Hoffman, J., dissenting). Unlike *Vega,* 12 Ohio St.3d 185, threshold admissibility is the issue in the case before us. Moreover, unlike *Vega,* our case is not about the reliability of intoxilyzers in general. Our case is limited to whether the Intoxilyzer 8000 is reliable. In short, the circumstances at issue in *Vega* were fundamentally distinguishable from those in our case.

{¶53} Additionally, the rule in *Vega* does not contemplate a situation where, as here, an approved device's general reliability has been assessed by other courts for both use in and out of this state and the device's reliability has been found suspect. *See State v. Johnson*, Portage County Municipal Court, January 6, 2012. *Vega* expressly states that its holding does not involve a situation where the defense asserts that there was an abuse of discretion by the director in approving the breath testing device at issue. *Vega* at 187, fn. 2. Obviously, in our case, if the Intoxilyzer 8000 is unreliable, approval would amount to an abuse of discretion and admission of the test results a violation of substantive due process.

{¶54} Breath tests are "'* * * generally recognized as being reasonably reliable on the issue of intoxication when conducted *with proper equipment* and by competent operators.'" (Emphasis added.) *Vega* at 186, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121, 128(1968). Thus, the central issue as presented in the case before us, does the Intoxilyzer 8000 qualify as "proper equipment"? The answer is "yes" if it is generally reliable and "no" if it is not. This is a query, however, that, under Ohio law, a trial court is entitled to resolve pursuant to R.C. 4511.19(D)(1)(b).

17

{¶55} In this case, the trial court exercised its discretion to safeguard the defendant's right to substantive due process by merely requiring the state to show the Intoxilyzer 8000 is generally reliable. Under the circumstances, this decision was sound and reasonable. This is particularly true in light of the fact that a trial court is vested with broad discretion in the admission or exclusion of evidence and in recognition that it has inherent power to exclude or strike evidence *on its own motion. Caroll v Caroll*, 7th Dist. No. 89-C-1, 1990 Ohio App. LEXIS 1339, *8 (April 5, 1990); *Neil v. Hamilton County*, 87 Ohio App.3d 670; *Oakbrook Realty Corp. v. Blout*, 48 Ohio App.3d 69, 70 (10th Dist. 1988).

{¶56} Given the foregoing point, there is no reason to remand this case to the trial court based upon perceived inadequacies in the motion to suppress. The trial court made it abundantly clear that it would not admit the test results absent proof of reliability of the Intoxilyzer 8000. Requiring the proponent to establish the reliability of scientific evidence is something that a trial court *may require* as previously discussed. The state was well aware of what the trial court required when it ordered the state to produce evidence of the Intoxilyzer 8000's reliability, independent and irrespective of the contents of the motion to suppress. Accordingly, there is no procedural due process violation of the state's right to notice and an opportunity to be heard. The trial court's order was unambiguous and an exercise of the sound discretion as the gatekeeper of breath test result admissibility.

{¶57} When an appellate court [**14] is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for

18

appellate review).  By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, quoting *Beechler*, 2010-Ohio-1900 at ¶67.

{¶58}  This appeal is centered around a discretionary decision made by the trial court.  As I find the court's decision not only reasonable, but constitutionally astute, I would affirm the trial court's exclusion of the breath test in light of the state's refusal to present evidence on the issue.