[Cite as *State v. Mason*, 2013-Ohio-2612.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0129** |
| IRVIN E. MASON, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R2012 TRC 07065.

Judgment: Reversed and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Dennis Day Lager*, Portage County Public Defender, and *Leonard W. Hazelett*, Assistant Public Defender, 209 South Chestnut Street, #400, Ravenna, OH 44266 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, the State of Ohio, appeals from the judgment of the Portage County Municipal Court, Ravenna Division, granting defendant-appellee, Irvin E. Mason's, Motion to Suppress. The issue to be decided in this case is whether a trial court, in the performance of its role as gatekeeper, may require the State to demonstrate the general scientific reliability of a breath testing instrument where the Ohio Director of Health has approved such instrument for determining the concentration

of alcohol in a person's breath.  For the following reasons, we reverse and remand the decision of the court below.

{¶2}   On May 25, 2012, Mason was issued a traffic ticket, charging him with Operating a Vehicle While Under the Influence (OVI), a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(a); and OVI, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(h).

{¶3}   On September 26, 2012, Mason filed a Motion to Suppress, raising various grounds for the suppression of evidence and the breath test results, including, inter alia, that there was no cause for stopping or detaining Mason, that the breath samples were not analyzed properly or taken in accordance with the law, and that the breath testing instrument operator was not properly qualified.  The Motion also asserted that the test result from the Intoxilyzer 8000 was inadmissible and scientifically unreliable, pursuant to *State v. Johnson*, Portage County Municipal Court case 2011 TRC 04090.

{¶4}   A hearing on the Motion to Suppress was held on October 3, 2012.  At that hearing, defense counsel noted that while it was arguing that the Intoxilyzer 8000 results were inadmissible under *Johnson*, it also had additional arguments regarding the existence of probable cause to make the traffic stop and wanted to reserve argument on these issues pending the results of a potential appeal in this matter.  The State noted that it would not present any evidence or experts to testify as to the reliability of the Intoxilyzer 8000, consistent with the position it had taken in prior cases.  The court stated that it would exclude the breath test results, pursuant to *Johnson*, but that it would wait to hold a hearing as to the other suppression issues, including those related to probable cause, until after the appeal was decided, to which the State did not object.

{¶5} In an October 4, 2012 Journal Entry, the trial court granted Mason's Motion to Suppress with respect to the results of the Intoxilyzer 8000. The court noted that it had considered the arguments of counsel and the *Johnson* case in reaching its determination that the breath test results were inadmissible. In *Johnson*, the trial court held that the State was required to present evidence at a hearing for the trial court to determine the general scientific reliability and admissibility of the breath test results of the Intoxilyzer 8000. In the present matter, the court also held that, based on the suppression of the breath test results, the violation of R.C. 4511.19(A)(1)(h) is dismissed. The court found "that the Defense Attorney reserved his right to proceed on any other issues raised in the Motion to Suppress at a later date, there being no objection by the State."

{¶6} The State timely appeals and raises the following assignment of error:

{¶7} "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶8} The appropriate standard of review where the lower court's judgment is challenged on a purported misconstruction of the law is de novo. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 16. "In determining a pure question of law, an appellate court may properly substitute its judgment for that of the trial court." (Citation omitted.) *Id.*

{¶9} We must first address Mason's argument that the lower court's October 4, 2012 Journal Entry is not a final order. Mason's argument is based on the distinction between a motion to suppress and a motion in limine, and he argues that since the motion ruled upon "was in essence a Motion in Limine," it is not a final appealable order.

3

Mason argues that the judgment was "limited to an initial evidentiary ruling regarding the admissibility of the results of the Intoxilyzer 8000 under the Ohio Rules of Evidence" and does not "determine the ultimate admissibility of the evidence."

{¶10} "The purpose and effect of a motion to suppress and a motion *in limine* are distinct." *State v. French*, 72 Ohio St.3d 446, 449, 650 N.E.2d 887 (1995). A "motion to suppress" is a "[d]evice used to eliminate from the trial of a criminal case evidence which has been secured illegally, generally in violation" of a constitutional right. *Id.*, citing Black's Law Dictionary (6 Ed.1990) 1014. "[T]he ruling of the court at the suppression hearing prevails at trial and is, therefore, automatically appealable by the state." *Id.*, citing R.C. 2945.67(A); Crim.R. 12(K).

{¶11} In contrast, a "motion *in limine*" is a motion "which is usually made before or after the beginning of a jury trial for a protective order against prejudicial questions and statements * * * to avoid injection into trial of matters which are irrelevant, inadmissible and prejudicial." (Citation omitted.) *State v. Grubb*, 28 Ohio St.3d 199, 200, 503 N.E.2d 142 (1986). In ruling on a motion in limine, "the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial. Finality does not attach when the motion is granted." (Citation omitted.) *Defiance v. Kretz*, 60 Ohio St.3d 1, 4, 573 N.E.2d 32 (1991).

{¶12} The Ohio Supreme Court has held that "[a]ny motion, however labeled, which, if granted, restricts the state in the presentation of certain evidence and, thereby, renders the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed, is, in effect, a motion to suppress. The granting of such a motion is a final order and may be appealed pursuant to R.C. 2945.67 and Crim. R. 12(J) [now (K)]." *State v. Davidson*, 17 Ohio

4

St.3d 132, 477 N.E.2d 1141 (1985), syllabus. Accordingly, "[a] pretrial challenge to a breathalyzer test, if granted, destroys the state's case under [former] R.C. 4511.19(A)(3) [prohibited breath alcohol concentration], and the state is permitted to appeal pursuant to R.C. 2945.67 and Crim. R. 12[(K)(2)]." *Defiance* at 4.

{¶13} As this court has recently held in very similar circumstances, a determination that "the Defendant's breath test shall not be admitted during the trial" was not a "tentative or precautionary ruling." *State v. Miller*, 11th Dist. No. 2012-P-0032, 2012-Ohio-5585, 983 N.E.2d 837, ¶ 19. This court further held that "[a]ny doubt as to the finality of this ruling is removed by the court's dismissal of the charge of operating a vehicle with a prohibited breath alcohol concentration," which also occurred in the present matter. *Id.*

{¶14} For the foregoing reasons, the municipal court's October 4, 2012 Journal Entry is a final order, properly appealed by the State pursuant to R.C. 2945.67(A) and Crim.R. 12(K)(2), which allow a prosecuting attorney to appeal a decision granting a motion to suppress evidence under certain circumstances, when there is no reasonable possibility of effective prosecution in the absence of the suppressed evidence.

{¶15} In its sole assignment of error, the State argues that, pursuant to the provisions of R.C. 3701.143 and Ohio Adm. Code 3701-53-02(A), a trial court is required to accept the Intoxilyzer 8000 as an appropriate device for chemically analyzing a person's breath to determine the amount of alcohol in the breath. It further argues that pursuant to *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984), a defendant may not attack the general reliability of a breath testing instrument and that the State is not required to present evidence to support a determination that the test is generally reliable.

5

{¶16} Mason rejects the State's argument for several reasons, including the contention that the use of the word "may" in the phrase "the court may admit evidence on the concentration of alcohol" in the OVI statute recognizes the trial court's discretion to admit and exclude evidence and that a threshold showing of reliability by the State is required.

{¶17} The Ohio General Assembly has charged the Ohio Director of Health to "determine, or cause to be determined, techniques or methods for chemically analyzing a person's * * * breath * * * in order to ascertain the amount of alcohol * * * in the person's * * * breath[.]" R.C. 3701.143. The Intoxilyzer 8000 has been approved as an "evidential breath testing instrument" by the director of health. Ohio Adm.Code 3701-53-02(A)(3).

{¶18} This court has recently addressed the exact issue raised by the State regarding the general reliability of the Intoxilyzer 8000 and determined that, pursuant to *Vega*, a defendant may not make "a general attack upon the reliability and validity of the breath testing instrument," although breath test results are subject to challenge on a variety of grounds, including specific attacks on the reliability of the test and attacks on the performance of the test in a specific defendant's case. *Miller*, 2012-Ohio-5585, at ¶ 30-32; *State v. Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583, 983 N.E.2d 855, ¶ 25 and 35; *State v. Rouse*, 11th Dist. No. 2012-P-0030, 2012-Ohio-5584, 983 N.E.2d 845, ¶ 24 and 32.

{¶19} As was discussed in the foregoing cases, the lead Ohio Supreme Court case on this issue is *Vega*, in which the court addressed the issue of whether the general reliability of intoxilyzers could be challenged "in view of the fact that the General Assembly has legislatively provided for the admission of such tests in R.C. 4511.19 if

analyzed in accordance with methods approved by the Director of Health." *Vega*, 12 Ohio St.3d at 186, 465 N.E.2d 1303. In *Vega*, the Ohio Supreme Court made clear that "an accused may not make a general attack upon the reliability and validity of the breath testing instrument," since the General Assembly "ha[s] legislatively resolved the questions of the reliability and relevancy of intoxilyzer tests." *Id.* at 188-190.

{¶20} When duly challenged, the State must demonstrate that the bodily substance was "analyzed in accordance with methods approved by the director of health" and "by an individual possessing a valid permit." R.C. 4511.19(D)(1)(b). The Ohio Supreme Court has affirmed that "[t]here is no question that the accused may * * * attack the reliability of the specific testing procedure and the qualifications of the operator," as well as present "expert testimony as to testing procedures at trial going to weight rather than admissibility." *Vega* at 189. Thus, "[t]he defendant may still challenge the accuracy of his specific test results, although he may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood alcohol levels." *State v. Tanner*, 15 Ohio St.3d 1, 6, 472 N.E.2d 689 (1984); *French*, 72 Ohio St.3d at 451-452, 650 N.E.2d 887.

{¶21} In addition to attacks on the specific performance of a particular breath test in an individual defendant's case, a defendant may also make an attack on the reliability of the Intoxilyzer 8000 based on specific reasons, as opposed to general assertions that the State failed to prove its reliability, which is prohibited under *Vega*. *See Vega* at 189.

{¶22} The dissent relies on a general statement by the court in *Vega* to contravene the specific holding of the Ohio Supreme Court in *Vega*. That analysis is inapposite of the holding in *Vega* that "most of *the original questions as to the general*

7

*reliability of the tests* and the relation between blood-alcohol levels and driver impairment *have been answered,* expressly or impliedly, by the legislatures." (Citation omitted.) (Emphasis sic.) *Vega*, 12 Ohio St.3d at 188, 465 N.E.2d 1303.

{¶23} Despite these rulings, Mason contends that trial courts nevertheless retain the discretion to hear argument on the general or scientific reliability of a breath testing instrument, relying on a statement in *French* allowing certain evidentiary objections to chemical test results to be raised. However, this argument has already been rejected by this court in *Miller*, since *French* does not create an exception to the *Vega* rule prohibiting challenges to the general scientific reliability of breath testing instruments. *Miller*, 2012-Ohio-5585, at ¶ 28; *State v. Urso*, 195 Ohio App.3d 665, 2011-Ohio-4702, 961 N.E.2d 689, ¶ 90 (11th Dist.).

{¶24} Mason also asserts that the trial court could not take judicial notice of the reliability of the Intoxilyzer 8000, since no court in the trial court's jurisdiction has approved of expert testimony to establish the reliability of the instrument, and that *Vega* does not establish the reliability of the instrument.

{¶25} We disagree. As explained in the foregoing analysis, *Vega* requires the lower court to accept the general reliability of the Intoxilyzer, pursuant to the determination of the Ohio Director of Health. This eliminates the necessity of the State presenting expert testimony or other evidence as to the general reliability of the Intoxilyzer 8000. *See Dayton v. Futrell,* 2nd Dist. No. CA 8615, 1984 Ohio App. LEXIS 11631, *3-4 (Oct. 26, 1984) (The "judiciary must take notice that [intoxilyzer breath] tests, properly conducted, are reliable irrespective of disagreements among experts and that the results of such tests are admissible. Accordingly, judicial notice of this factor dispenses with the necessity for expert testimony by the state in chief for the efficiency

of the intoxilyzer machine."); *Miller* at ¶ 29, citing *State v. Massie*, 2nd Dist. No. 2007 CA 24, 2008-Ohio-1312, ¶ 36 (noting that a *Daubert* challenge or presentation of expert testimony is "forestalled by the 'legislative mandate recognized in *Vega*'") (citation omitted).

**{¶26}** Mason finally argues that the delegation of authority to the director of health to determine the validity of testing methods and devices violates the separation of powers doctrine and infringes upon the trial court's role as gatekeeper and its regulation of the admission of expert testimony under Evidence Rule 702.

**{¶27}** "[T]he Ohio Rules of Evidence, which were promulgated by the Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution, must control over subsequently enacted inconsistent statutes purporting to govern evidentiary matters." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 491, 715 N.E.2d 1062 (1999). "In order to demonstrate the legislature infringed upon the judiciary's power to enact evidentiary rules appellant must demonstrate the legislation contradicts or is an attempt to supersede an existing evidentiary rule." *State v. Boczar*, 11th Dist. No. 2004-A-0063, 2005-Ohio-6910, ¶ 38.

**{¶28}** The delegation of authority to the director of health to establish the appropriate methods for determining the amount of alcohol in a defendant's bodily substances does not conflict with any Rule of Evidence. Mason refers to Evidence Rule 702; but nothing in this rule establishes the trial court as the sole "gatekeeper" with respect to the general reliability of instruments measuring the concentration of alcohol in a person's bodily substances. On the contrary, Evidence Rule 102 states that "[t]hese rules shall not supersede substantive statutory provisions."

{¶29} The Ohio Supreme Court, in *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, expressly characterized R.C. 4511.19(D)(1) as a "three-paragraph gate-keeping statute." *Id.* at ¶ 20. Where R.C. 4511.19(D)(1) is satisfied, it does "no[t] matter under which portion of R.C. 4511.19(A) a person is charged, the state has the opportunity to offer the results of a 'bodily substance' test to show either impairment * * * or to show that the statutory concentrations of alcohol or drugs have been exceeded." *Id.* at ¶ 19.

{¶30} In a similar situation, the Ohio Supreme Court considered the General Assembly's authority to statutorily provide for the admissibility of the results of field sobriety tests based on substantial compliance, rather than the strict compliance standard, based on common law, adopted by Ohio courts. The Supreme Court found no encroachment "on the exclusive rule-making authority of the judiciary." *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 22. While acknowledging that "[t]he trial judge is the guardian of the admissibility of evidence," the General Assembly, "through its deliberative process," could conclude "that failure to strictly comply with test procedures affects the evidentiary value of field sobriety tests but that substantial compliance will not result in the tests' exclusion," i.e., "that the tests are sufficiently reliable to be admissible by meeting a clear-and-convincing standard." *Id.* at ¶ 23.

{¶31} Likewise in the present case, R.C. 3701.143 and R.C. 4511.19(D)(1) do not preempt the trial court's authority to rule on the ultimate admissibility of evidence, but rather delegate the preliminary determination regarding the general scientific reliability of testing devices to the director of health. As noted above, the defendant may always challenge the accuracy of his or her specific test results and the

10

qualifications of the person administering the test, as well as make an attack on the reliability of the Intoxilyzer 8000 based on specific reasons instead of general assertions of the State's failure to prove its reliability. This is consistent with this court's recent holding in *Rouse*. 2012-Ohio-5584, at ¶ 21 ("a defendant is entitled to produce evidence to assail the particular results of the subject test, thereby preserving the trial court's role as gatekeeper").

{¶32} We note that, in the present case, Mason challenged the breath test results of the Intoxilyzer 8000 on several specific grounds, including that the breath test was not administered within the time limit and that the instrument operator lacked the necessary qualifications, and also challenged the stop of the vehicle. The municipal court appears to have granted Mason's Motion solely on the grounds stated in *Johnson*, that the State failed to produce evidence of the Intoxilyzer 8000's general scientific reliability. Further, pursuant to the transcript and the Journal Entry, Mason specifically requested the right to reserve arguments on these additional issues until after the appeal in this matter. Accordingly, on remand, it will be necessary for the court to hold another hearing to address the other issues raised in Mason's Motion to Suppress. *Miller*, 2012-Ohio-5585, at ¶ 34.

{¶33} The sole assignment of error is with merit.

{¶34} For the foregoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, granting Mason's Motion to Suppress and dismissing the charge of violating R.C. 4511.19(A)(1)(h), is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.

11

CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶35} I respectfully dissent.

{¶36} As the writing judge notes, the state relies on *Vega*, 12 Ohio St.3d 185. I do not believe that *Vega* stands for the sweeping proposition advanced by the state – i.e., that the results of all tests from breath analysis machines approved by the Director of Health for use in OVI cases must, automatically, be accepted into evidence, so long as the operator is competent and the machine functional.

{¶37} In *Vega*, the court held: "an accused is not denied his constitutional right to present a defense nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the reliability of intoxilyzers in general." *Id.* at 186. The *Vega* court premised its decision on several considerations.

{¶38} First, the court cited to its prior holding in *Westerville v. Cunningham*, 15 Ohio St.2d 121, 123 (1968), regarding use of breath analysis machines in OVI cases, for the proposition that: "'such tests are today generally recognized as being reasonably reliable on the issue of intoxication when conducted with proper equipment and by competent operators.'" *Vega* at 186.

12

{¶39} Second, the court noted that the General Assembly confided discretion to determine proper methods of analyzing breath alcohol to the Director of Health, and that the director had designated the machine in question as appropriate. *Vega*, 12 Ohio St.3d at 186-187.

{¶40} Third, the court noted that under the version of R.C. 4511.19 then current, the results of a breath analysis exceeding the statutory level merely created a rebuttable presumption that the defendant was intoxicated, which did not prevent the defendant showing, through other evidence, that he or she was not, in fact, under the influence of alcohol. *Vega*, 12 Ohio St.3d at 188-189.

{¶41} I respectfully disagree that the trial court in this case misconstrued the law regarding breath analysis machines, or the law regarding admissibility of their results. I believe it construed the statutes correctly, according to their plain language, and the requirements of the federal and state constitutions.

{¶42} R.C. 4511.19(D)(1)(b) states in part:

{¶43} "In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation * * * [and] [t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an

13

individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

**{¶44}** The foregoing statute uses the word "may." "'The statutory use of the word "may" is generally construed to make the provision in which it is contained optional, permissive, or discretionary.'" *State v. Davie*, 11th Dist. No. 2000-T-0104, 2001 Ohio App. LEXIS 5842, *16 (Dec. 21, 2001), quoting *Dorrian v. Scioto Conserv. Dist.*, 27 Ohio St.2d 102, 107 (1971). Thus, R.C. 4511.19(D)(1)(b) does not mandate admissibility of the results of the breath test. Rather, the statute vests the trial court with discretion in making a determination with respect to admissibility, notwithstanding approval from the director of health. As my colleague, Judge Wright, has recently stated in a series of penetrating dissents:

**{¶45}** "R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C. 4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results." *State v. Collazo*, 11th Dist. No. 2012-L-067, 2013-Ohio-439, ¶38.[1]

---

1. *See also Johnson*, 11th Dist. No. 2012-P-0008, 2103-Ohio-440; *State v. Schrock*, 11th Dist. No. 2012-P-0022, 2013-Ohio-441; *State v. Harmon*, 11th Dist. No. 2012-P-0067, 2013-Ohio-442; *State v. Funk*, 11th Dist. No. 2012-P-0071, 2013-Ohio-444; *State v. Hatcher*, 11th Dist. Nos. 2012-P-0077 and 2012-P-0078, 2013-Ohio-445; *State v. Webb*, 11th Dist. No. 2012-P-0052, 2013-Ohio-541; *State v. Neice*, 11th Dist. No. 2012-P-0064, 2013-Ohio-542; *State v. Butler*, 11th Dist. No. 2012-P-0066, 2013-Ohio-543; *State v. Lucas*, 11th Dist. No. 2012-P-0070, 2013-Ohio-544; *State v. Pizzino*, 11th Dist. Nos. 2012-P-0079 and 2012-P-0080, 2013-Ohio-545; *State v. Kuntz*, 11th Dist. No. 2012-P-0082, 2013-Ohio-546; *State v. McCune*, 11th Dist. No. 2012-P-0089, 2013-Ohio-547; *State v. Zoeckler*, 11th Dist. No. 2012-P-0092,

**{¶46}** Again, the statutory scheme does not establish the proposition advanced by the state: i.e., results of any breath analysis machine *must* be accepted at trial. Rather, the statutes provide that the Director of Health has sole authority to approve machines – but that the trial courts of Ohio have discretion to accept the results generated by the machines so approved. Further, *Vega* prohibits blanket attacks on the reliability of breath analysis machines generally, and premises this upon the use of "'proper equipment.'" *Vega*, 12 Ohio St.3d at 186. The question raised in this case is the reliability of the Intoxilyzer 8000 specifically. A breath analysis machine could only be "proper equipment" if it *is* reliable.

**{¶47}** As Judge Wright further noted in *Collazo*:

**{¶48}** "In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C. 4511.19(D)(1)(b). As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v. Revolution Software Inc.,* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45, * * * (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

---

2013-Ohio-548; *State v. Tagliaferri*, 11th Dist. No. 2012-P-0094, 2013-Ohio-549; *State v. Hinton*, 11th Dist. No. 2012-P-0095, 2013-Ohio-550; *State v. Canino*, 11th Dist. No. 2012-P-0102, 2013-Ohio-551.

15

**{¶49}** "Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

**{¶50}** "'Substantive due process, (although an) ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are "implicit in the concept of ordered liberty."  (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available.' *State v. Small*, 162 Ohio App.3d 375, 2005-Ohio-3813, ¶11, * * * (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir. 1989).

**{¶51}** "However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; '(substantive) * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence.' *Barefoot v. Estelle*, 463 U.S. 880, 931, fn. 10, * * *(1983)." (Parallel citations omitted.)  *Collazo*, 11th Dist. No. 2012-L-067, 2013-Ohio-439, ¶41-44.

**{¶52}** Case law indicates serious problems regarding the reliability of the Intoxilyzer 8000, which make it incumbent on trial courts to assure the reliability of its results, before allowing those results into evidence.  In one case, plaintiff brought a federal action for violation of his Fourth Amendment rights, following his arrest for driving under the influence.  *Briggs v. Holsapple*, D.Oregon Civil Case No. 08-6037-KI, 2009 U.S. Dist. LEXIS 11295, *1 (Feb. 11, 2009).  Despite considerable indications on the field sobriety tests that the plaintiff was inebriated, his breath test on an Intoxilyzer 8000 resulted in a 0.000% BAC.  *Id.* at *6.  The state of Oregon brought its own expert

16

in to testify *against* the reliability of the machine. *Id.* at *7. As stated by the district court:

**{¶53}** "Justin Lazenby, Forensic Scientist, Oregon State Police Toxicology Unit, has reviewed the facts of plaintiff's arrest and has concluded: (a) the Intoxilyzer 8000 underestimates actual BAC 84% of the time; (b) the Intoxilyzer 8000 will round all breath sample results below 0.010% down to 0.000%; (c) based on the alcohol consumption described by plaintiff in his deposition, plaintiff's BAC at the time of driving would be between 0.019% and 0.023%, * * *." *Id.* at *7-8.

**{¶54}** The state of Ohio does not seem to have access to the "source code" for the Intoxilyzer 8000. *State v. Gerome, et al.*, Athens County M.C. Nos. 11TRC01909, 11TRC00826, 11TRC01734, and 11TRC02434, at 15 (June 29, 2011).

**{¶55}** "The source code is the human readable format of the software that controls the operation of the Intoxilyzer 8000. In other words, the source code tells the Intoxilyzer 8000 how to calculate the numerical result, such as 0.08. If the source code contains a mistake, then the result generated will be defective." *Montana v. Peters*, 2011 MT 274, 362 Mont. 389, 264 P.3d 1124, ¶4 (Mont. 2011).

**{¶56}** Testimony has been elicited that such widely used devices as smart phones can interfere with the Intoxilyzer 8000 at frequencies it cannot detect. *Gerome* at 20-21.

**{¶57}** A criminal defendant's substantive due process rights cannot be overridden by a legislative enactment, and there is no need to interpret Ohio's laws regarding approval of breath analysis machines in a way that does. Indeed, courts must presume that legislative enactments are constitutional, and construe them to achieve that end. *State v. Acord*, 4th Dist. No. 05CA2858, 2006-Ohio-1616, ¶17. Similarly, the

17

decision in *Vega*, premised on the use of "proper equipment," necessarily recognizes the duty of our trial courts to protect defendants' substantive due process rights by requiring them to insure that the equipment is proper. *Vega*, 12 Ohio St.3d at 186.

{¶58} It must also be noted that the Sixth Amendment to the U.S. Constitution, and the Ohio Constitution, Article I, Section 10, guarantee a defendant's right to confront the witnesses against him. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶110. In order to invoke the protections of the Confrontation Clause, the evidence must be "testimonial." As this court held in *State v. Ansell*, 11th Dist. No. 2008-P-0111, 2009-Ohio-4802, ¶38:

{¶59} "The Supreme Court of the United States has therefore held that the Confrontation Clause prohibits the admission or use of testimonial statements of a witness who does not appear at trial *unless* that witness is unavailable to testify, and the defendant has had a prior opportunity for cross-examination. * * * *Crawford* [*v. Washington*, 541 U.S. 36,] * * * 68. Given this formulation, only testimonial statements 'cause the declarant to be a "witness" within the meaning of the Confrontation Clause' *Davis v. Washington* (2006), 547 U.S. 813, 821, * * *. For purposes of the Confrontation Clause, 'a testimonial statement includes one made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."' *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, * * *, at paragraph one of the syllabus, quoting *Crawford*." (Emphasis sic.) (Parallel citations and footnote omitted.)

{¶60} The breath test result from the Intoxilyzer 8000 has been found to be testimonial within the meaning of the Confrontation Clause. *United States v. Gorder*, 726 F.Supp.2d 1307, 1314 (D.Utah 2010). It seems there may be a violation of the

18

Confrontation Clause inherent in the use of the Intoxilyzer 8000, unless the machine's reliability has been established, for, while a defendant may question the operator about his or her qualifications, and whether protocol was followed in administering the breath test, the defendant has no way of knowing what that test actually constitutes.

{¶61} For all the reasons foregoing, I would affirm the judgment of the trial court.